**Gladys RODRIGUEZ et al., Plaintiffs-Appellees,**

**Mrs. Loretta Smith et al., Plaintiffs-Intervenors-Appellees,**

**v.**

**Harold O. SWANK et al., Defendants-Appellants.**

**Nos. 73–1252, 73–1253.**

United States Court of Appeals, Seventh Circuit.

Heard Nov. 30, 1973.

Decided May 9, 1974.

Bonny Sutker Barezky, Asst. Atty. Gen., Paul P. Biebel, Jr., Bernard Carey, State's Atty., Robert E. Lehrer, Legal Assistance, Chicago, Ill., for defendants-appellants.

Sheldon H. Roodman, Robert E. Lehrer, Legal Assistance Foundation of Chicago, Chicago, Ill., for appellees.

Before CLARK, Associate Justice, Retired,[1] and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

In October 1970, the district court ordered the Illinois Department of Public Aid to process all applications for assistance under the Aid to Families with Dependent Children Program ("AFDC") within 30 days from the time they are filed.[2] A supplemental order was entered in February 1972 to enforce compliance with the earlier order. Because incomplete compliance persisted with respect to the 1970 order, plaintiffs moved in October 1972 for further remedies, suggesting two possible solutions. The first was a "presumptive eligibility" concept whereby any applicant who had an unprocessed AFDC application on file for 30 days would be presumed eligible and immediately mailed an assistance check, as in Class v. White, (D.Conn. Civ. No. 14704, 1972). The other alternative suggested was adopted by the district court to enforce compliance with its 1970 order. Thus on November 9, 1972, the court directed that after February 1, 1973:

> "*any* AFDC application pending more than thirty days, through no fault of the applicant, and subsequently acted upon favorably, will entitle the applicant to $100, compensatory damages in addition to the regular benefits received." (emphasis in original)

The court's opinion described this sanction as a "supplementary remedy." In

---

1. Associate Justice Tom C. Clark of the United States Supreme Court, Retired, is sitting by designation.

2. This was the time period then provided by regulation, and this order was clearly correct. See Rodriguez v. Swank, 318 F.Supp. 289 (N.D.Ill.1970), affirmed, 403 U.S. 901, 91 S.Ct. 2202, 29 L.Ed.2d 677.

colloquy with counsel, the judge explained:

"The purpose, and the only purpose, that I have in mind, is to insure—It's another incentive insofar as the Department is concerned to apply. I mean, to process all applications as they are required to do within the 30 days, that's the only purpose of it."

Consequently, he gave the defendants three months to being complying with the court decree or begin paying $100 to every AFDC applicant whose rights were violated. He refused to order the presumptive eligibility remedy also suggested by plaintiffs. We affirm.

Because of related issues involved in Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662, we entered a hold order postponing a decision herein until after the Supreme Court rendered its decision in that case. On March 25, 1974, the Supreme Court decided *Jordan* and held that the Eleventh Amendment precluded the award of retroactive benefits to persons eligible for aid to the Aged, Blind and Disabled.

The *Jordan* opinion carefully confined its holding to retroactive benefits to be paid by Illinois state officials. The Supreme Court noted that sovereign immunity "is no bar to that part of the District Court's judgment that prospectively enjoined petitioner's predecessors from failing to process applications within the time limits established by the federal regulations." 42 LW 4423 [94 S.Ct. 1356]. Justice Rehnquist pointed out that Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, justified the relief awarded by the district court in the prospective portion of its order in *Jordan*. He added that a suit is not barred merely because it has a prospective impact on the state treasury:

"The injunction issues in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. In Graham v. Richardson, 403 U.S. 365 [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In Goldberg v. Kelly, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing." 42 LW 4424 [94 S.Ct. 1357].)

■ The injunction approved in *Jordan* ordered compliance with the federal regulations. It therefore corresponds to the 1970 injunction in this case. The order before us is a civil contempt order designed to bring about compliance with the 1970 injunction. Under certain circumstances of non-compliance, this order might have a greater fiscal impact than the 1970 injunction alone. But that does not render this order invalid. *Jordan* indicated that the Eleventh Amendment would not bar the payment of state funds "as a necessary consequence of compliance in the future with a substantive federal question determination." 42 LW 4424 [94 S.Ct. 1358]. But it did not stop there. The opinion went on to imply that payment of state funds could be ordered as "a form of compensation to those whose applications were processed on a slower time schedule" when state officials were under a "court-imposed obligation to conform to a different standard." 42 LW 4424 [94 S.Ct. 1358]. Such compensation is one of the effects of the order under review.

■ The power to order compliance with federal regulations would be mean-

ingless if the injunction were unenforceable. It should not be forgotten that Ex parte Young denied a habeas corpus petition brought by the Attorney General of Minnesota, who had been fined and committed to the custody of the federal Marshal for contempt of a federal injunction. 209 U.S. at 126, 168. The Eleventh Amendment does not limit a federal court of equity to one inflexible remedy. Neither does the Social Security Act. The argument that forfeiture of federal funds is the exclusive remedy in cases such as this was rejected in Rosado v. Wyman, 397 U.S. 397, 420, 90 S. Ct. 1207, 25 L.Ed.2d 442. The district court here reasonably concluded that "complete forfeiture of federal funds would be too harsh a remedy to impose upon the state \* \* \*." Of course, if defendants prefer that remedy, they may at any time voluntarily forfeit federal funds and relieve themselves of any obligation to comply with federal regulations.

■ The remedy adopted here was well within the district court's discretion. "Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." United States v. Mine Workers, 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884. The order here serves both purposes, but primarily the coercive one. Money payments contingent on non-compliance are a traditional means of enforcing injunctions. See 330 U.S. 305.

Here the court dealt patiently with defendants for more than two years, attempting unsuccessfully to gain compliance with its injunction. When the court finally entered the supplementary order which is the subject of this appeal, it gave defendants three additional months of grace. Only in the continued absence of compliance was $100 to be awarded to those whose applications were not timely processed. Accordingly, the fiscal consequence to the state treasury was the necessary result of attempts to gain compliance with a decree which by its terms was prospective in nature. "Such an ancillary effect on the state treasury is a permissible and often inevitable consequence of the principle announced in Ex parte Young, supra." 42 LW 4424 [94 S.Ct. 1358].

■■ Defendants' remaining contentions are unpersuasive. Exhaustion of state remedies is irrelevant to a proceeding to enforce a federal injunction. The amendment of the regulations during the pendency of this appeal to allow 45 days for processing applications is similarly irrelevant. It is a matter to be taken up with the district court on a motion to modify the injunction, perhaps retroactively to the date of the amendment. Defendants were not denied due process in the oral argument in the district court; if there were any error, it was cured in proceedings on defendants' subsequent motion to vacate.

For the reasons given by the district court, we agree that it properly refused to adopt the remedy of presumptive eligibility, as urged by plaintiffs in their cross-appeal. The cross-appeal also seeks an advisory opinion as to whether presumptive eligibility would have been a permissible alternative remedy if the remedy actually given had been denied. We decline to render such an opinion. Muskrat v. United States, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246.

The order is affirmed.