[Civ. No. 57276. Second Dist., Div. Five. Dec. 29, 1980.]

PROFESSIONAL ENGINEERS IN CALIFORNIA
GOVERNMENT, Plaintiff and Respondent, v.
STATE PERSONNEL BOARD, Defendant and Appellant.

COUNSEL

George Deukmejian, Attorney General, and Robert L. Mukai, Deputy Attorney General, for Defendant and Appellant.

Lemaire, Faunce & Katznelson and Edward L. Faunce for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—This appeal is from the issuance of a supplemental writ of mandate resulting from a contempt proceeding (pursuant to Code Civ. Proc., § 1097) commenced by petitioner, respondent Professional Engineers in California Government (hereinafter PECG), against appellant the California State Personnel Board (hereinafter Board), for its alleged failure to comply with a 1976 writ of mandate.

The history of this action dates back to 1974. In that year PECG obtained a declaratory relief judgment against the Board construing the duties of the latter under Government Code section 18850. This judgment held that the Board had a mandatory duty to set salary ranges for state civil service employees and was required to ascertain, for the classes of position in the civil service, the prevailing rates of compensation for comparable service in private and other employment, and that the duties performed by the Board in ascertaining prevailing rates included an adjudicatory, nonlegislative fact-finding function. No appeal was taken from this judgment so that it became final.[1]

On December 3, 1975, PECG commenced a second action, seeking a peremptory writ of mandate to compel the Board to grant it such a hearing with respect to prevailing rates for the fiscal year 1975-1976 and for each succeeding year. In 1976, the court granted PECG's petition for writ of mandate, ordering the Board to "immediately grant [PECG] an adjudicatory nonlegislative fact-finding hearing with respect to prevailing rates for comparable service in other public employment, and in private business for the fiscal year 1975-1976 and for each succeeding year."[2] This judgment was affirmed in an unpublished Court of Appeal opinion (Div. One of this court).

Subsequent to the Court of Appeal decision, the parties agreed to skip the fiscal years 1975-1976, 1976-1977 and 1977-1978, and to comply with the writ for the year 1978-1979. Accordingly, during December 1977 the Board provided an evidentiary-type hearing with respect to the survey data available to the parties at that time.

The hearing took place before a hearing officer of the Board, PECG and the Board's "Pay and Benefits Section" being represented by counsel. Following the close of this hearing and the submission of

---

[1]That judgment declared that: "(1) Board has a mandatory duty to establish and adjust salary ranges for each class of position in the state civil service; (2) Board must ascertain for each class of position the prevailing rates for comparable service in other public and in private employment; and (3) '[t]he duties to be performed by Board in ascertaining prevailing rates of pay for comparable work in each class of position of engineers include a non-legislative, adjudicatory fact-finding function.'"

[2]The writ further stated that "[s]aid hearing...be conducted according to the normal administrative hearing procedures including as a minimum the right to call witnesses and cross-examine witnesses under oath, notice of and reasonable access to any and all evidence, documents or other material considered by the Board, the right to argue the evidence and a written decision analyzing the evidence and making a finding as to the prevailing rates in public employment and private business for engineering and allied classes. The production of evidence at or prior to the hearing shall be subject to all privileges provided by law."

posthearing briefs, the hearing officer rendered a written decision (adopted by the Board in Mar. 1978), in which he found that neither party had established a prevailing rate of pay for engineer classes by evidence competent to support a finding under Government Code section 11513 (finding that the evidence relied upon by the Board staff was hearsay), and, furthermore, that the process of ascertaining prevailing wages was more appropriately a legislative type function than an adjudicatory function. In other words, it was the Board's finding that neither of the parties to the administrative proceeding had established a prevailing rate "by evidence acceptable in an adjudicatory non-legislative, fact-finding hearing," and, moreover, that for either party to meet the requirements of competency applicable to administrative adjudication would be prohibitively expensive and time consuming.

On March 21, 1978, PECG requested a further hearing on the issue of prevailing wages for 1978-1979 in order to put on the record the surveys conducted by the Board in the spring of 1978, and to consider any other evidence that might be offered which was pertinent. The Board, based upon its decision in the previous hearing, denied PECG's request unless the latter could offer proof identifying the nature of the evidence it would be prepared to submit at such a hearing, and, further proof to establish the presumptive competency of the proposed evidence to support a finding of fact under Government Code section 11513.

On July 10, 1978, PECG commenced the aforementioned contempt proceeding, petitioning under Code of Civil Procedure section 1097, alleging that the Board was in contempt "based on its failure to ascertain prevailing rates of pay for engineers in the private and public sectors based upon competent evidence, and its refusal to schedule a further adjudicatory hearing to establish by competent evidence the prevailing rates of pay in the private and public sectors."

The Board then filed a motion to vacate an ex parte order to show cause why they should not be adjudged in contempt, on the grounds that PECG's declaration did not constitute a contempt and that the actions complained of were not subject to review in the contempt proceeding.

At the following hearing, on August 4, 1978, the trial court decided to "treat the application for a finding of contempt as an application for a supplemental writ of mandate under Section 1085 [traditional manda-

mus]." On November 30, 1978, the trial court denied the Board's motion for an order discharging the writ and granted PECG's implied motion for supplemental writ of mandate.

The trial court, having concluded that the Board had not obeyed the original writ, issued the supplemental writ which ordered the Board "to either base its determination of prevailing wages in the public and private sectors for State employed engineers on the competent evidence contained in the records before [it] in connection with the [1978-1979 fiscal year hearing], or, in the alternative, that [the Board] immediately grant [PECG] a further trial-type hearing to consider the evidence of [relevant] prevailing wages...for fiscal year 1978-1979 and for each succeeding fiscal year."

It is from the issuance of this writ that the Board now appeals.

I

*There has been a final judgment rendered with regard to the propriety of issuing a writ commanding the holding of an adjudicatory hearing.*

■ The Board reasserts its original argument that "no statutory requirement of a trial-type hearing exists for ascertainment of prevailing rates of pay for state employees, and that the state employees represented by PECG possess no interest in a prevailing rate of pay sufficient to entitle them to a trial-type hearing as a matter of due process of law."

Moreover, the Board argues at length that the relative fiscal and administrative burdens which full-scale trial-type procedures entail is a critical factor in determining whether they are to be required as a matter of due process.

On the basis of these arguments the Board contends that the judgment of the trial court should be reversed with instructions to enter judgment denying the supplemental writ of mandate and also discharging the original writ issued in 1976.

The Board's argument ignores the fact that the same parties represented by this appeal regarding issuance of the same writ concerning the same issues, presented their case to this court in 1977. In an unpub-

lished opinion this court affirmed the trial court's judgment requiring PECG be afforded a "trial-type" hearing and which concluded that mandate was the appropriate remedy to enforce that right.

As the Supreme Court stated in *Penziner* v. *West American Finance Co.* (1937) 10 Cal.2d 160, 169 [74 P.2d 252]: "It is clearly established by the decisions in this state that when the precise question before the court has been decided in a former appeal in the same action and under substantially the same state of facts, the parties are estopped from again litigating this question in any subsequent proceeding either before the trial or appellate courts." (See also *Davies* v. *Krasna* (1975) 14 Cal.3d 502, 507 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].)

■ In regard to the Board's contention that full scale trial-type procedures entail great fiscal and administrative burdens, we note that it is true that fiscal difficulty has sometimes been held to excuse nonperformance of official duty. (See *Sutro Heights Land Co.* v. *Merced Irr. Dist.* (1931) 211 Cal. 670 [296 P. 1088].) However, we are in agreement with the court's conclusion in *King* v. *Martin* (1971) 21 Cal.App. 3d 791, 796 [98 Cal.Rptr. 711], that "the Supreme Court did not intend by its language in *Sutro Heights Land Co.* to establish a generally applicable excuse from the performance of mandatory official duty wherever fiscal difficulty is shown. Thus, in *May* v. *Board of Directors* (1949) 34 Cal.2d 125 [208 P.2d 771], the Supreme Court declared that 'it is no defense to a proceeding by a bondholder to obtain a writ of mandate to compel the levy of taxes or assessments to pay the bonds, or interest thereon, that such levy will impoverish or cause serious financial embarrassment to the public corporation. [Citations.]' (*Id.* at p. 130.)"[3]

## II.

*Appellant also contends that its decision was not subject to collateral attack, was conclusive on the parties, and precluded the trial court from issuing the supplemental writ.*

---

[3]Moreover, we note that the Board's responsibilities under Government Code section 18850 shall not be applicable to employees represented by recognized employee organizations under section 3520.5 of the State Employer-Employee Relations Act (§ 18850, subd. (b)). As more employee organizations become "recognized" under section 3520.5, the Board's fiscal and administrative burdens may be eased.

A. *The Board argues that its decision was entitled to a res judicata effect in the action before the superior court and that the principles of collateral estoppel also precluded the judgment entered by that court.*

This argument rests on the principle that when statewide agencies exercise adjudicatory authority derived from the Constitution, the exercise is that of judicial power. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35-36, 42, fn. 14 [112 Cal.Rptr. 805, 520 P.2d 29].) Therefore, the Board argues, its judgment is that of a state court of limited jurisdiction. The Board contends that because its "decision was final, its determination of the incompetency of the evidence in the administrative proceeding was binding upon PECG as a party to that proceeding, and the superior court was [precluded] by principles of res judicata and collateral estoppel, from a divergent determination of the issue."

This argument is fallacious. From a public policy standpoint alone, it makes little sense to say that an administrative agency ordered to comply with a writ of mandate can end the matter simply by deciding that compliance is impossible and then argue that its decision cannot be questioned. Moreover, the argument ignores the well settled rule that the court which issues a writ of mandate retains continuing jurisdiction to make any orders necessary and proper for the complete enforcement of the writ. (Code Civ. Proc., § 1097;[4] *Molar* v. *Gates* (1979) 98 Cal.App.3d 1, 25 [159 Cal.Rptr. 239]; *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 205 [139 Cal.Rptr. 396].) Herein, the trial court's characterization of this action as a "supplemental writ" indicates that it was merely continuing to exercise its jurisdiction in attempting to enforce the original writ.

B. *Secondly, the Board argues that if its decision is reviewable, it is only by way of Code of Civil Procedure section 1094.5 (administrative mandamus) and not Code of Civil Procedure section 1085 (traditional mandamus), and respondent is now barred from challenging the Board's decision because the applicable statute of limitations has run.*

---

[4]Code of Civil Procedure, section 1097, reads in pertinent part that the court "may make any orders necessary and proper for the complete enforcement of the writ."

We repeat, the court retains continuing jurisdiction to make any order necessary and proper for the complete enforcement of a writ (*Molar* v. *Gates, supra,* 98 Cal.App.3d 1, 25) and any inadequacy in the measures taken to correct the problem may be dealt with in subsequent orders of the court.

The issue before us is whether traditional mandamus (Code Civ. Proc., § 1085) was the appropriate means through which to enforce the initial writ.

The Board argues that since the contempt application was heard as a motion for a section 1085 writ, and not administrative mandamus, and since the statute of limitations has expired for the latter, the trial court is now barred from reviewing its decision.

We agree with appellant's contention that section 1094.5 of the Code of Civil Procedure is the proper avenue of review; however, we do not agree with the Board's conclusion that its decision is now not reviewable by the trial court.

Code of Civil Procedure section 1094.5 is applicable "for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer...."[5]

Herein, the trial court found as a conclusion of law that section 1085 was "more appropriate" than a section 1097 contempt action for penalties. We do not question that the trial court may reasonably apply a contempt penalty against an administrative body in general. (*Cartwright* v. *Swoap* (1974) 40 Cal.App.3d 567, 571 [115 Cal.Rptr. 402]; *Carroll* v. *Civil Service Commission* (1970) 11 Cal.App.3d 727, 733 [90 Cal.Rptr. 128].) We do, however, conclude that the trial court

---

[5]A traditional writ of mandate under section 1085 is a method of compelling the performance of a legal, usually ministerial duty, whereas the purpose of an administrative mandamus proceeding, under section 1094.5 is to review the final adjudicative action of an administrative body. (Cal. Civil Writ (Cont.Ed.Bar 1970) § 5.8, p. 67.) A further distinction between the two procedures is that under section 1094.5 the only evidence allowed to be presented (with the exception of (1) evidence that, in the exercise of reasonable diligence could not have been presented at the administrative hearing, or (2) evidence improperly excluded at the administrative hearing (§ 1094.5, subd. (d)), is the administrative hearing transcript.

should have proceeded under section 1094.5 since the facts of this case indicate that review of the administrative record may be necessary to adequately determine a fair means of complying with the initial writ, and whether, as the Board maintains, the writ has in fact been complied with.[6] We hold that while a section 1094.5 review is not necessarily mandated simply by the fact that an administrative agency is the subject of the action, where, however, the review necessitates looking into the administrative record itself, the trial court must proceed under section 1094.5 and not section 1085.

The real question before us is whether the Board's written decision is supported by substantial evidence, or a necessary lack thereof, as found in the 1977 hearing. Although PECG claims that a record of the hearing is not necessary because the Board's findings themselves show that the latter did not produce comparable rates of pay as ordered by the original writ, nevertheless the Board's decision reflects its belief that such evidence was not only not presented, but cannot be obtained even by a new hearing, and this conclusion is based upon the record of the 1977 hearing. The very fact that the supplemental writ ordered the Board to reopen the hearing indicates the court's belief that the Board's finding that no competent evidence could be introduced upon which to base a decision was unsupported by any evidence in the hearing. The decision adopted by the Board in the hearing itself implied, with regard to the introduction of summary figures into evidence, that the pay and benefits section of the Board's Personnel Management Services Division which regularly conducts salary surveys, could have, but did not, introduce evidence regarding data collectors' reports and other information from the field under the business records exception to the hearsay rule. (Evid. Code, § 1271.) Therefore, it is apparent that the parties are really arguing the substantiality of the evidence that led to the Board's decision. (*Giannini Controls Corp.* v. *Superior Court* (1966) 240 Cal. App.2d 142, 151 [49 Cal.Rptr. 643].) Moreover, the writ ordered the Board, in the alternative, to hold a new hearing in order to obtain the necessary competent evidence. While we believe the Board may have a

---

[6]The record of an administrative hearing is not necessary in every section 1094.5 action. For example, administrative mandamus may lie for the mere refusal to hold a hearing required by law. (*Jean* v. *Civil Service Commission* (1977) 71 Cal.App.3d 101, 109 [139 Cal.Rptr. 303].) The Supreme Court has also held that an administrative transcript is not necessary in a section 1094.5 review when the agency's findings are facially deficient. (*Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 519, fn. 19 [113 Cal.Rptr. 836, 522 P.2d 12].) The *Topanga* court stated that if the findings are not facially deficient, then the reviewing court must determine whether substantial evidence supports the agency's findings and for this the record is necessary.

duty to obtain such evidence, we also recognize that the law will not require the impossible. (Civ. Code, § 3531.) Thus, on both accounts it may prove very helpful for a disposition of this matter for the trial court to review the administrative transcript and failure to do so was an abuse of discretion. We repeat, upon remand the trial court is still free to conclude that it is the Board's burden to produce evidence competent to meet the requirements of a trial-type hearing.

We now address appellant's argument that a review under section 1094.5 is closed to PECG in that the one-year statute of limitations has run. As we noted before, the trial court has continuing jurisdiction to enforce its writ. (*Cartwright* v. *Swoap, supra,* 40 Cal.App.3d 567, 571.) The statute of limitations is tolled during the pendency of litigation seeking to have the same matter adjudicated on another basis. (*Myers* v. *County of Orange* (1970) 6 Cal.App.3d 626, 634-635 [86 Cal.Rptr. 198].) The superior court issued the initial order in 1976. It has continuing jurisdiction to issue orders and/or penalties to enforce that order at any time thereafter until the writ has been fully satisfied.

The order is affirmed and the cause remanded to the court below with directions to proceed under section 1094.5.

Affirmed with directions.

Ashby, J., and Hastings, J., concurred.