[No. AO14578. First Dist., Div. Three. July 1, 1983.]

ROSE KING et al., Plaintiffs and Respondents, v.
MARION J. WOODS, as Director, etc., Defendant and Appellant.

572

COUNSEL

John K. Van de Kamp, Attorney General, and John J. Klee, Jr., Deputy Attorney General, for Defendant and Appellant.

Eric P. Gold, Clifford C. Sweet and Evelyn R. Frank for Plaintiffs and Respondents.

OPINION

**WHITE, P. J.**—Appellant and defendant Marion J. Woods, as Director of the California Department of Social Welfare, (hereafter Department)[1] appeals from an order of the Superior Court of Alameda County enforcing a writ of mandate requiring the Department to render a final decision within 90 days from the date a welfare applicant or recipient requested a fair hearing. Appellant contends that the Department has not violated the writ and, in the alternative, that any violation was not wilful and without just excuse so as to subject it to sanctions under Code of Civil Procedure section 1097. In addition, appellant contends that the order violates federal requirements by prohibiting appellant from construing any of the $100 payments under the order as income or resources.

On March 27, 1972, pursuant to the court's decision in *King* v. *Martin* (1971) 21 Cal.App.3d 791 [98 Cal.Rptr. 711], a peremptory writ of man-

---

[1] Now entitled the State Department of Social Services.

date was entered mandating the Department to render a final hearing decision within 60[2] days from the date a welfare applicant or recipient requested a fair hearing. The purpose of the writ was to enforce the state and federal regulations requiring "fair hearing" decisions to be issued within 60 days. The writ applied to four aid programs known as aid to families with dependent children (AFDC), aid to the totally disabled (ATD), old age security (OAS), and aid to the blind (AB).[3]

On April 8, 1981, respondents applied to the trial court for orders enforcing the writ of mandate. On August 27, 1981, the trial court reaffirmed the original writ and, pursuant to Code of Civil Procedure section 1097, ordered appellant to comply. The court sought to induce prospective compliance by (1) giving appellant a three and one-half month grace period to commence obeying the writ; (2) ordered fines which would commence only after expiration of the grace period and, then, only if the disobedience continued; (3) ensured that the fines would be proportionate to the degree of appellant's continued disobedience; and (4) ordered appellant to provide respondents with reports enabling them to monitor compliance.

Appellant admits that the Department is not in complete compliance with the federal time limits, i.e., he admits that at the present time not all "fair hearing" requests are finally resolved within 90 days of the initial request for a hearing. Appellant and respondents disagree, however, as to the extent of appellant's noncompliance. Appellant argues that only 10 to 12 percent of "fair hearing" decisions are resolved after the 90-day deadline. Respondents contend that nearly 80 percent of the decisions have been untimely in recent years.

1. *What the Writ Requires.*

Appellant contends that the writ only requires substantial compliance with the federal and state regulations which require that fair hearing decisions be rendered within 90 days of request. His argument is based on the language and purpose of section 404 of title IV of the Social Security Act (42 U.S.C. § 604) and on the Third Circuit's decision in *Shands* v. *Tull* (3d Cir. 1979) 602 F.2d 1156. He argues that 100 percent compliance with the 90-day deadline is not required and therefore that he has not violated the writ. We disagree.

---

[2]The federal regulation requiring that fair hearing decisions be rendered within 60 days from request has since been changed to provide 90 days.

[3]On January 1, 1974, the ATD, OAS, and AB programs were repealed. (Pub.L. No. 92-603, tit. III, § 303.) Thus, only the AFDC program remains covered by the writ.

■ Welfare applicants and recipients are entitled to a prompt, fair hearing prior to the denial, termination or reduction of benefits. (*Like* v. *Carter* (8th Cir. 1971) 448 F.2d 798, 804; see also *Goldberg* v. *Kelly* (1970) 397 U.S. 254, 267 [25 L.Ed.2d 287, 298, 90 S.Ct. 1011]; *Wheeler* v. *Montgomery* (1970) 397 U.S. 280, 281-282 [25 L.Ed.2d 307, 309-310, 90 S.Ct. 1026].) In *Shands* v. *Tull, supra,* 602 F.2d 1156, 1159, the court noted that "[b]ecause the withholding of welfare benefits upon which recipients may depend in whole or in part for food, clothing, shelter or medical attention 'may deprive an eligible recipient of the very means by which to live while he waits,' [citation] the period of constitutionally acceptable delay may be relatively short—arguably as short as ninety days—even for applicants who have initially been declared ineligible." Thus, to adequately provide due process protection to welfare applicants or recipients, the Department must render prompt fair hearing decisions.

In conformance with the procedural rights of applicants and recipients, federal and state regulations include time limits for fair hearing decisions. The federal statutory scheme provides that a welfare applicant or recipient may request a hearing following any adverse determination by any state agency which dispenses welfare benefits. (42 U.S.C., §§ 302(a)(4), 602(a)(4).) A state welfare agency is required to provide a "[p]rompt, definitive and final" administrative decision within 90 days from the date of the request for a fair hearing. (45 C.F.R., § 205.10(a)(16).) The California Legislature has empowered the director of the Department to provide specific time limits for the performance of the steps necessary to complete a "fair hearing." (Welf. & Inst. Code, § 10553, subd. (e).) These time limits are set out in Public Social Services Manual sections 22-000 et seq. In *King* v. *Martin, supra,* 21 Cal.App.3d 791, 794, the court noted that "[i]nferably one purpose of these time limits is to assure that the state's fair hearing procedure does in fact conform to the federal 60-day requirement."

■ The federal and state time limits for fair hearing decisions are mandatory, not merely directory. (*King* v. *Martin, supra,* 21 Cal.App.3d 791, 795.) In *King,* the court noted that nothing in the statutory or regulatory language suggests that the fair hearing deadline is only advisory or directory and not mandatory. Instead, the court stated that the purpose of the statutory time limits is to be a "safeguard" of prompt administrative action. To construe the language as merely directory would defeat the very purpose of the time limits. Consequently, the *King* court held that the statutory deadline for fair hearing decisions is mandatory.

Pursuant to the court's decision in *King* v. *Martin,* a peremptory writ of mandate was issued directing Robert Martin, the director of the Department to comply with the federal and state laws by rendering decisions within 60

days. The writ stated in pertinent part: "'You Are Hereby Commanded upon receipt of this writ to comply with the requirements of the State and Federal regulations that for each and every fair hearing, a final hearing decision be rendered within 60 days of the date of request for a hearing.'" (*Cartwright* v. *Swoap* (1974) 40 Cal.App.3d 567, 570, fn. 5 [115 Cal.Rptr. 402].)

The writ specifically requires that "each and every" fair hearing decision be rendered within 60 days of request. If the court had contemplated only substantial compliance, language to that effect would have been used. If appellant had wished to limit the clear language of the writ, he could have attempted to modify its language during the 10 years between its issuance and the issuance of the order. No such action was taken by appellant, however. Thus, the language of the writ must be enforced. Appellant must render *every* fair hearing decision within 90 days of request to be in conformance with the writ.[4]

## 2. *Validity of the Order Enforcing the Writ.*

■ Appellant contends that orders made pursuant to Code of Civil Procedure section 1097, which impose jail sentences or fines, must be supported by evidence of wilful disobedience without just excuse. Appellant argues that respondent has not shown beyond a reasonable doubt that appellant wilfully refused to obey the writ. Therefore, appellant concludes that the trial court wrongly issued the order to enforce the writ.

Section 1097 of the Code of Civil Procedure provides: "When a peremptory mandate has been issued and directed to any inferior tribunal, corporation, board, or person, if it appear to the Court that any member of such tribunal, corporation, or board, or such person upon whom the writ has been personally served, has, without just excuse, refused or neglected to obey the same, the Court may, upon motion, impose a fine not exceeding one thousand dollars. In case of persistence in a refusal of obedience, the Court may order the party to be imprisoned until the writ is obeyed, and may make any orders necessary and proper for the complete enforcement of the writ."

■ This section authorizes three methods by which a court may enforce a peremptory writ of mandate: (1) a court may impose a fine not exceeding $1,000; (2) a court may order the disobedient party to be imprisoned until

---

[4]Appellant's challenge of the legal basis of the writ is irrelevant. Although the writ was appealable (Code Civ. Proc., § 1094.5, subd. (g)), appellant did not appeal it. Therefore, the writ has become final and it is not within our power to modify it.

the writ is obeyed; and (3) a court may make any order necessary and proper to enforce the writ. Because these methods vary in their severity, different levels of disobedience must be shown to justify their use.

The third method, allowing the court to order compliance, is the least severe and thus only requires that a court find that such an order is necessary and proper under the circumstances. ■ In *Professional Engineers in Cal. Government* v. *State Personnel Bd.* (1980) 114 Cal.App.3d 101, 109 [170 Cal.Rptr. 547], the court noted that it is a "well settled rule that the court which issues a writ of mandate retains continuing jurisdiction to make any orders necessary and proper for the complete enforcement of the writ." (See also, *Molar* v. *Gates* (1979) 98 Cal.App.3d 1, 25 [159 Cal.Rptr. 239, 12 A.L.R.4th 605]; *County of Inyo* v. *City of Los Angeles* (1977) 71 Cal.App.3d 185, 205 [139 Cal.Rptr. 396].) This authority, though codified in section 1097, is an inherent power of a court issuing a writ. In *Hobbs* v. *Tom Reed Gold Min. Co.* (1913) 164 Cal. 497, 501 [129 P. 781], the Supreme Court stated "[a]mple power to compel obedience is conferred by section 1097 of the Code of Civil Procedure, although, doubtless, the power would exist in the absence of such express grant." ■ Thus, the power to order compliance with a writ is not dependent on a showing of wilfulness or persistent refusal.[5] This method of enforcing a writ may be used when there is any inadequacy in the compliance with the writ.

Section 1097 also allows the imposition of a fine not exceeding $1,000. This method of enforcement may be used upon a finding of the following three elements: first, that the party was personally served with the writ; second, that the party refused or neglected to obey the writ; and third, that the party's refusal or neglect was without just excuse.

This method has been likened to a contempt penalty. In *Carroll* v. *Civil Service Commission* (1970) 11 Cal.App.3d 727, 733-734 [90 Cal.Rptr. 128], the court stated that "[t]he remedy in cases of refusal or neglect to obey a peremptory writ of mandate is that provided for in Code of Civil Procedure section 1097, and is in the nature of sanctions for contempt." Thus, section 1097 may be read to require a showing of the contempt element of willfulness before fines may be imposed. However, as in the case of contempt, the term "willful" should not be construed as meaning only a

---

[5]Though grammatically the statute seems to require a finding of persistent refusal before an order of imprisonment or any other order may be issued, courts have historically treated the two clauses of this sentence as separate methods. In *Professional Engineers in Cal. Government* v. *State Personnel Bd., supra,* 114 Cal.App.3d 101, 109, the court stated that a court may make "any orders necessary and proper for the complete enforcement of the writ," and cited the second clause of the second sentence in section 1097 as the "pertinent part" of the statute.

deliberate intention to disregard a court order, but rather as encompassing an indifferent disregard of the duty to obey the order promptly. (*In re Burns* (1958) 161 Cal.App.2d 137, 142 [326 P.2d 617].) Thus, for a fine to be imposed the court must find refusal or neglect to obey the writ, but need not find deliberate intent.

The final method of enforcement allows a court to order imprisonment where there is persistence in refusal to obey the writ. Because the penalty is more severe than a fine, a higher level of disobedience must be found. All the elements necessary for the imposition of a fine must be shown and, in addition, there must be a finding of persistence in refusal. Thus, for imprisonment more than mere indifference must be demonstrated. The court must find intentional refusal to obey the writ.

■ The order in question here provides that, commencing on December 1, 1981, a final decision for each and every fair hearing must be rendered within 90 days after request. If appellant fails to render timely decisions, he must pay a penalty to each claimant in the amount of $100 for each month, or 15-day period thereof, over the 90-day deadline. In addition, the order requires that appellant provide respondents' attorneys with monthly reports showing appellant's compliance with the order.

The fines imposed on the appellant are valid under section 1097. The writ was entered on March 27, 1972. During the past 11 years, however, appellant has failed to obey the writ. In appellant's opening brief, he states that "[appellant] does not deny and readily admits that the Department is not in complete compliance with the federal time limits, i.e., he admits that at the present time not all 'fair hearings' requests are finally resolved within 90 days of the initial request for a hearing." Thus, appellant has refused or neglected to obey the writ.

To excuse his lack of compliance, appellant asserts that "he has tried his best to comply with the federal 90-day rule" and that "the reason that all requests are not resolved within 90 days of the initial request lies, not in some sinister plan to save the State money, but in the enormity of the task." We recognize that the task of rendering all fair hearing decisions within 90 days of request is a big one. However, we do not feel that it is impossible.

The budget report of the legislative analyst for 1981-1982 suggests that appellant is fully able to comply with the writ and is, in fact, overstaffed to perform this task. The report recommended a deletion of nine fair hearing officers, stating that these positions "have not been justified on a workload basis." In addition, Jerold Prod, deputy director of the legal affairs division, stated in his declaration on June 3, 1981 that "[y]our declarant is now

preparing to institute more actions to enhance and speed the rate of progress. These have been considered in the past but had been rejected for reasons unrelated to timeliness alone, a factor apparently now of paramount concern to petitioners. They are listed in roughly the order your declarant would implement them to speed the rate at which we approach literal 100% total 'timeliness.'" While we acknowledge that the additional items necessary to achieve 100 percent compliance may involve additional expense, this additional expense does not justify violating the due process rights of welfare applicants and recipients. (*Goldberg* v. *Kelly, supra,* 397 U.S. 254, 261 [25 L.Ed.2d 287, 295].) Therefore because appellant has sufficient staff and additional methods to comply with the 90-day requirement we find that appellant's failure to comply is without just excuse.

The order requiring 100 percent compliance and requiring appellant to provide respondents' attorney with monthly reports showing appellant's compliance with the order is also valid under section 1097. Because appellant admittedly has failed to comply with the writ, we hold that the order is necessary and proper to compel and monitor appellant's compliance.

### 3. *Conformity With Federal Law.*

■ Appellant argues that the order conflicts with federal law because it prohibits appellant from construing any of the $100 payments under the order as income or resources of the welfare recipients. He contends that under section 402(a)(7)(A) of the Social Security Act (42 U.S.C., § 602(a)(7)(A)), the state is required, in determining need for welfare benefits, to take into consideration any income or resources of a child or person for whom aid is claimed. By excluding the $100 fine from income, he argues, the recipient of the fine would receive a larger AFDC grant than would the recipient who has income from wages or other sources.

In *Rodriguez* v. *Swank* (7th Cir. 1974) 496 F.2d 1110, 1111, the Seventh Circuit affirmed an order directing that "'*any* AFDC application pending more than thirty days, through no fault of the applicant, and subsequently acted upon favorably, will entitle the applicant to $100, compensatory damages in addition to the regular benefits received.'" The court noted that sanctions may be employed in a civil contempt proceeding for "either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." (*Ibid.,* at p. 1113.) The court stated that the order requiring $100 fines served both purposes, but primarily the coercive one. (*Id.*) The *Rodriguez* court therefore held that payment of state funds could be ordered as a form of compensation to AFDC applicants whose applications were not processed within 30 days of request as required by the order. (*Id.,* at pp. 1112-1113.)

In *Alexander* v. *Hill* (W.D.N.C. 1982) 549 F.Supp. 1355, 1361, the court ordered the North Carolina state welfare officials to pay each applicant who is determined to be eligible for AFDC or Medicaid a remedial fine of $50 for each week his or her application was delayed beyond the relevant time limit without good cause. The court stated that "any money paid to an applicant as a result of this order shall not be recoverable by defendants. Nor shall the money paid to a successful applicant be treated as income or reserve for the purpose of determining public assistance eligibility or benefit levels." (*Ibid.*)

The facts of *Rodriguez* and *Alexander* are strikingly similar to the case at hand. As in these federal cases, the $100 fines imposed on appellant pursuant to the order are for the purpose of compelling compliance with the writ. (Code Civ. Proc., § 1097.) If the appellant is allowed to consider the fines as income or resources the coercive purpose of the fines will be lost. In addition, welfare recipients will lose the benefits of the $100 fines as compensation for the delay. Therefore, we follow the *Rodriguez* and *Alexander* decisions and hold that fines levied pursuant to the order may be in addition to other benefits.

In addition to being necessary to compel conformance with the writ, the $100 fines authorized by the order are consistent with the purpose of section 402 of the Social Security Act. Under this section each state is required to submit to the Department of Health and Human Services (formerly HEW) a general state plan describing how it will administer the AFDC program. (42 U.S.C. § 602.) Section 402 mandates that the state's plan provide consideration of income and resources in determining need. (42 U.S.C. § 602(a)(7)(A).) The federal regulations require that the state's AFDC plan provide "that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way. . . ." (45 C.F.R. § 233.20(a)(1)(i).)

The court order at issue here does not attempt to change California's general plan. Rather, it authorizes fines in individual cases as a method of inducing compliance with the mandatory federal regulation. The provision prohibiting appellant from reducing a recipient's welfare by the amount of the fine results only once in an increased amount for recipients who suffered a delay in receiving a fair hearing decision. The fine does not lessen the amount of welfare benefits granted to recipients who have not suffered such a delay. We therefore find that the order requiring $100 fines in cases of noncompliance is consistent with federal law.

The order is affirmed.

Scott, J., and Barry-Deal, J., concurred.