Filed 8/29/22 Shayan v. Alliant International University CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| ARIANA SHAYAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ALLIANT INTERNATIONAL UNIVERSITY,<br><br>    Defendant and Respondent. | B316721<br><br>(Los Angeles County<br>Super. Ct. No. 20STCP01322) |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Reversed.

Kosnett Law Firm and James V. Kosnett for Plaintiff and Appellant.

Paul, Plevin, Sullivan & Connaughton, E. Joseph Connaughton and Karyn R. Moore for Defendant and Respondent.

———————————————

Ariana Shayan appeals from an order denying her motion to enforce a writ of administrative mandate issued against Alliant International University (the University), respondent here.

The University dismissed Shayan from its clinical psychology program after finding she had cheated on examinations and engaged in "unauthorized collaboration" by working with a fellow student on schoolwork. Shayan challenged her dismissal through a petition for a writ of administrative mandate under Code of Civil Procedure[1] section 1094.5. The trial court concluded the charge of unauthorized collaboration, to which Shayan admitted, was supported by substantial evidence. The court found the evidence that Shayan had cheated on exams, however, to consist of multiple levels of uncorroborated hearsay, with no means for the University adjudicators to evaluate the credibility of the witnesses. The court thus concluded the charge of exam cheating was not supported by substantial evidence. In light of that finding, the court granted the writ petition, directing the University to reconsider whether dismissal remained an appropriate sanction.

The University then filed a return reporting its compliance with the writ. The return attached a written statement from one of the hearsay declarants, and a new decision by a University dean once again dismissing Shayan. The new decision no longer mentioned the exam cheating charge; instead, it was based on the incident of unauthorized collaboration to which Shayan had admitted, as well as a second incident of unauthorized

---

[1] Unspecified statutory citations are to the Code of Civil Procedure.

collaboration the University contended was established by the hearsay declarant's statement and other evidence.

Shayan filed a motion to enforce the writ under section 1097, arguing the University's new decision relied on essentially the same evidence rejected by the trial court when it granted the writ, and therefore did not comply with the writ. Shayan demanded reinstatement, sanctions against the University, and initiation of contempt proceedings under section 1211.

The trial court denied the motion, finding the University had reconsidered the decision as the trial court had ordered and thus was not in defiance of the writ. In its comments at the hearing on the motion, the trial court expressly left for another day the question whether the University's new decision was valid on its own merits. The trial court indicated its belief that if Shayan wished to challenge the new decision, she should do so through a new writ petition.

On appeal, Shayan argues, as she did below, that the University's new decision suffered from the same flaws as the first decision, in particular its reliance on hearsay, and thus the University's supposed compliance with the writ was illusory. She further argues the trial court erred by not considering the full substance of the University's new decision before denying her enforcement motion.

We decline to address the adequacy of the University's new decision, a question on which the trial court has yet to rule and for which we do not have a sufficient record. We agree, however, that as a legal and practical proposition, the trial court should have ruled on the adequacy of the new decision before denying Shayan's enforcement motion. Case law confirms that a motion under section 1097 is one of several ways a petitioner may

3

challenge the adequacy of a respondent's return, and the trial court erred to the extent it suggested Shayan must file a new writ petition.

Accordingly, we reverse and remand for the trial court to address Shayan's challenge to the University's new decision.

## BACKGROUND

### 1. The University Dismisses Shayan for Academic Misconduct

The parties have not included the administrative record of the underlying disciplinary proceedings in the record on appeal. Our summary of those proceedings is taken from the trial court's ruling granting the writ of administrative mandate.

Shayan was a doctoral student in the University's clinical psychology program. In February 2018, the University investigated allegations that Shayan had cheated on her coursework. The University took no action against Shayan at that time, but advised her that if more evidence of academic misconduct emerged, she would be " 'at risk of immediate termination from the program . . . .' "

In October 2019, the University investigated new allegations that Shayan had cheated on her Clinical Proficiency Assessment (CPA) exam. The University's Student Evaluation and Review Committee (SERC) held a meeting on October 14, 2019, followed by a hearing before the Student Conduct Hearing Committee (Conduct Committee) on November 14, 2019. Shayan appeared at both the meeting and the hearing and denied the allegations of academic misconduct. The University presented no live testimony, instead offering written summaries of statements by Shayan's classmates, and an audit report by the University's

4

information technology department of Shayan's e-mail on the University e-mail system.

The Conduct Committee concluded Shayan had violated the University's code of conduct regarding "examination behavior" by cheating on exams, and, separately, had engaged in "unauthorized collaboration" by seeking assistance from a classmate on a psychology paper. Following Shayan's unsuccessful appeal of the findings to the vice president of student services, the clinical psychology program director (program director) dismissed Shayan from the program.

Shayan appealed her dismissal to a dean. In that appeal, Shayan admitted to the charge of unauthorized collaboration with a classmate on a psychology paper, but continued to deny cheating on exams. The dean upheld the dismissal.

## 2. The Trial Court Grants Shayan's Petition for a Writ of Administrative Mandate

Shayan challenged her dismissal through a petition for a writ of administrative mandate in the trial court. She argued she was denied a fair hearing, the evidence did not support the University's findings, and her penalty of dismissal was excessive.

The trial court found that the hearing process was fair, rejecting Shayan's arguments that she was entitled to cross-examine witnesses, that the University presented false evidence, that the adjudicators were biased, that the University utilized an improper single-investigator discipline system, or that the University improperly rejected Shayan's new evidence in her administrative appeal. The court found substantial evidence of unauthorized collaboration, in light of Shayan's admission that she had done so.

The trial court found, however, that the evidence Shayan cheated on her exams was "uncorroborated hearsay," and therefore was not substantial evidence in support of that charge. The University's finding was based on information from two of Shayan's classmates, Lisette Montanez and Nirvana Ramtahal, presented in the form of a " 'timeline of information from Lisette Montanez' "and notes taken by the program director when she interviewed Montanez and Ramtahal.

The trial court found the evidence presented by the University was insufficient for the SERC or Conduct Committee to make a proper credibility determination. Montanez and Ramtahal did not appear before either committee, nor did the program director who interviewed them. The program director's interview notes did not address witness demeanor and attitude, or indicate whether the program director considered the witnesses' motives or bias. The notes "constituted two layers of hearsay from which veracity—the primary issue on the disciplinary claim—turned."

The trial court further found the "timeline evidence" from Montanez was "replete with multiple-level hearsay," with the supposedly corroborating documentation all coming from Montanez—"a hearsay declarant's statements cannot be corroborated by the hearsay declarant."

The trial court concluded, "There was nothing before the SERC or Conduct Committee to judge the credibility of Montanez or Ramtahal. This is particularly problematic when the University resolved the credibility issue in favor of Montanez and/or Ramtahal over [Shayan]."

Turning to the question of whether the penalty of dismissal was excessive given that the only substantiated charge was

6

unauthorized collaboration, the trial court quoted *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 635 for the proposition " 'that in cases involving the imposition of a penalty or other disciplinary action by an administrative body, when it appears that some of the charges are not sustained by the evidence, the matter will be returned to the administrative body for redetermination in all cases in which there is a "real doubt" as to whether the same action would have been taken upon a proper assessment of the evidence.' "  The trial court "finds this case 'is one in which the principle of "real doubt" should properly be applied.'  [Citation.]"

The trial court granted Shayan's petition, and on May 4, 2021, issued a writ stating, "The University is ordered to reconsider the matter 'in light of the court's opinion and judgment . . . .'  The court does 'not limit or control in any way the discretion legally vested in' the University.  (See Code Civ. Proc. § 1094.5, subd. (f).)"  The writ directed the University "to comply and to file a return to this Writ within 60 days after service upon you."

3.      **The University Files a Return to the Writ**

On June 30, 2021, the University filed a return to the writ stating it had reconsidered its decision, specifically by obtaining a "sworn statement" from Montanez, providing Shayan an opportunity to respond to Montanez's statement, and having a dean not previously involved in the proceedings review the matter.  After reconsideration, the University issued a new decision again dismissing Shayan.  The return attached two documents:  the "Statement of Lisette Montanez," and the University's new decision.  (Boldface omitted.)

7

In her statement, Montanez stated she had been interviewed by the program director during the initial investigation and had provided certain information, which she summarized. Montanez further averred that she had accepted responsibility for her own academic misconduct and complied with sanctions imposed by the SERC. In the final paragraph of the statement, Montanez "certif[ied]" that the information in the statement was "true and correct to the best of my knowledge and recollection," and indicated her understanding that making false statements could subject her to "disciplinary proceedings" by the University. The statement bears what appears to be Montanez's signature.

The University's new decision was in the form of a letter addressed to Shayan from the new dean of the University's school of professional psychology, David Stewart. The letter stated that Stewart had reviewed the documentation related to Shayan's case, as well as the "sworn declaration" from Montanez. The letter stated that Stewart "afforded [Shayan] the opportunity to respond" to Montanez's statement, and that Shayan's attorney responded that Shayan already had addressed Montanez's allegations in the first disciplinary proceeding.

The letter then explained the basis of Stewart's conclusion that dismissal remained the appropriate sanction. Stewart noted Shayan's 2018 referral to the SERC and the warning to her at that time that future acts of misconduct put her at risk of immediate termination. Stewart further noted that Montanez's statement supported the SERC's earlier finding of "unauthorized collaboration," and Montanez's statement was "corroborated by documented evidence in the form of multiple emails and the results of the [information technology department] investigation

8

in 2019.  This evidence shows unauthorized collaboration in 2017 (also admitted to by [Shayan]) as well as unauthorized collaboration in 2019."  Stewart concluded that dismissal was appropriate "[c]onsidering the repeated acts of unauthorized collaboration, the prior findings by SERC in 2018 and specific admonition about the risks of future academic misconduct."  Stewart's letter did not refer to the charge that Shayan had cheated on exams.

Stewart's letter also "address[ed]  the credibility of Ms. Montanez," stating that "Ms. Montanez is obligated legally and professionally to not only tell the truth in any proceeding, but also to fully cooperate with any inquiry involving ethics and professional standards and to report any colleagues engaging in unethical behavior, including academic dishonesty.  Considering her professional and legal obligations, her own admission and acceptance of sanctions related to the CPA exam, [and] the corroboration of her sworn statements by the [information technology department] investigation, I have determined Ms. Montanez's statements are truthful and credible in light of the entire record."

### 4.     Shayan Moves To Enforce the Writ

In response to the University's new decision, Shayan filed a motion in the trial court to enforce the original writ under section 1097, contending the University had not complied.  Shayan claimed that the trial court's ruling, as well as the University's own policies, prohibited consideration of new evidence, namely Montanez's written statement.  To the extent new evidence could be considered, Shayan argued Montanez's statement nonetheless was hearsay and therefore suffered from the same defects as the evidence the trial court found insufficient when granting the writ.

9

Shayan further argued the statement provided no new information, but merely reiterated evidence the University already had presented and the trial court found wanting.

Shayan also questioned the credibility of Montanez's statement, which Shayan argued was not a proper declaration on penalty of perjury and was "specifically solicited by [the University] for the purpose of justifying [Shayan's] dismissal." Shayan listed reasons not to trust Montanez's statements, including implying that Montanez had cooperated with the University in exchange for a lesser sanction.

In conclusion, Shayan argued, "Respondents have shown that they will go to any length to disregard the Court's judgment" and "[a]ny remand of the matter to Respondents would be futile and would likely result in prolonged re-litigation." Shayan requested the trial court order the University to readmit her and to fine the University "for intentionally failing to obey the Court's judgment." Shayan further requested the court hold a hearing to show cause why the University should not be held in contempt under section 1211.

The University filed an opposition, arguing that the University had complied with the writ, which required the University only to reconsider its decision, not reinstate Shayan. The University further argued that it was entitled to consider new evidence, and that Montanez's statement was credible and could be considered despite being hearsay.

In reply, Shayan argued the University's new decision continued to rely on uncorroborated hearsay, with no means of assessing the credibility of Montanez and Ramtahal, and therefore did not comply with the writ. "[The University's] dismissal decision is still based on the same evidence and is

therefore not proper in light of the Court's opinion and judgment."

### 5. The Trial Court Denies the Motion To Enforce the Writ

At the hearing on the motion to enforce the writ, the trial court stated its tentative decision to deny the motion. The trial court noted that its original judgment directed the University to set aside its dismissal decision and reconsider it, and according to the return, the University had done so. Whether the new decision was itself supported by sufficient evidence would be the subject of a new writ proceeding, not a motion to enforce the original writ.

Arguing against the tentative, Shayan's counsel contended the University's reconsideration was a "charade," because the new decision was based on "an unsworn statement" that was "transparently redundant of what [the trial court] found insufficient." Shayan's counsel warned that a ruling in the University's favor would allow it to avoid enforcement of the writ by continually issuing new decisions based on new evidence that was no better than what the trial court already had rejected.

The University agreed with the trial court that it had complied with the order to reconsider its decision, and any challenge to that decision should be brought as a new writ petition.

The trial court explained that the original writ indicated the trial court was "not controlling the discretion of the University," and thus the writ allowed the University to impose a different penalty, hold a new hearing, call witnesses, or "whatever it wanted to do." "The return on the writ indicates and the evidence indicates that there was a new decision. The new

11

decision, while we may dispute the merits of that new decision, it did include some new evidence. Whether it's sufficient or not is not for today."

The trial court reiterated its finding that the University complied with the writ by setting aside the original decision and reconsidering it, and therefore any challenge to the new decision must be brought by a new writ petition. It adopted its tentative decision and denied the motion to enforce the writ. Its written minute order stated, "The Court having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows: [¶] Motion For Order To Enforce Judgment Under CCP §1097 and For Order To Show Cause Under CCP §1211 is denied." (Some capitalization omitted.)

Shayan timely appealed.

## DISCUSSION

" ' "The remedy of administrative mandamus . . . applies to private organizations that provide for a formal evidentiary hearing," ' " such as a private university conducting disciplinary proceedings. (*Doe v. Claremont McKenna College* (2018) 25 Cal.App.5th 1055, 1065.) "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (§ 1094.5, subd. (b).) The trial court may order the University "to set aside the order or decision." (*Id.*, subd. (f).) If the trial court does so, "it may order the reconsideration of the

12

case in light of the court's opinion and judgment and may order respondent to take such further action as is specially enjoined upon it by law, but the judgment shall not limit or control in any way the discretion legally vested in the respondent."  (*Ibid.*)

"When a respondent believes it has completely fulfilled the terms of a writ, its return should state that it has satisfied the writ in full compliance with the final judgment and writ, and set out the actions taken to meet the writ's terms.  [Citation.]  'While detailed findings are not necessarily required, the [respondent's] explanation should be thorough enough, and factual enough, to permit effective review by the courts.'  [Citation.]"  (*Los Angeles Internat. Charter High School v. Los Angeles Unified School Dist.* (2012) 209 Cal.App.4th 1348, 1355 (*Los Angeles Internat. Charter High School*).)

"Where, as here, the writ remands the matter to the administrative body with directions to proceed in a certain manner, and the return states that the court's mandate has been carried out, the petitioner may challenge the validity of that claim in one of several ways."  (*City of Carmel-By-The-Sea  v. Board of Supervisors* (1982) 137 Cal.App.3d 964, 971.)  For example, the "[p]etitioner may proceed by a new petition under Code of Civil Procedure section 1094.5, or by supplemental petition (using the original action number)."  (*Ibid.*)  "[T]he petitioner is not required to proceed by writ," however—"if [the petitioner] or the court is not satisfied with the return, the court may, on its own motion or on that of the petitioner, either oral or written, order the respondent to reconsider further."  (*Ibid.*)

A petitioner may also challenge the adequacy of a return through a motion to enforce the writ under section 1097, as Shayan did here.  (See *King v. Woods* (1983) 144 Cal.App.3d 571,

13

578 (*King*).)  That section provides, "If a peremptory mandate has been issued," and the respondent, "without just excuse, refused or neglected to obey the writ, the court may, upon motion, impose a fine not exceeding one thousand dollars.  In case of persistence in a refusal of obedience, the court may order the party to be imprisoned until the writ is obeyed, and may make any orders necessary and proper for the complete enforcement of the writ." (§ 1097.)

Despite the statutory language, a court need not find "evidence of wilful disobedience without just excuse" to grant a motion under section 1097.  (See *King*, *supra*, 144 Cal.App.3d at p. 577.)  The trial court has inherent authority to compel obedience with a writ it has issued, and therefore "the power to order compliance with a writ is not dependent on a showing of wilfulness or persistent refusal."  (*Id.* at p. 578; *Los Angeles Internat. Charter High School*, *supra*, 209 Cal.App.4th at p. 1355 ["The trial court that issues a writ of mandate retains continuing jurisdiction to make any orders necessary for complete enforcement of the writ."].)  Thus, "when there is any inadequacy in the compliance with the writ," a petitioner may invoke section 1097 to request the trial court "make any order necessary and proper to enforce the writ."  (*King*, at p. 578.)

On appeal, Shayan argues, as she did below, that the University's new decision did not comply with the writ because it relied on Montanez's statement, which Shayan contends is no better than the uncorroborated hearsay previously found insufficient by the trial court.  She asks us to direct the trial court "to order [the University] to set aside Shayan's dismissal and restore Shayan's student status."  Alternatively, she argues the trial court erred by failing to consider the substance of the

14

University's new decision before denying her enforcement motion, and requests that we remand for the trial court "to consider the substantive issue of whether [the University's] reconsideration and new decision were actually made in accordance with and in light of the [trial] court's opinion and judgment."

As to Shayan's first request, that we hold at this juncture that the University's new decision was flawed and that Shayan is entitled to reinstatement, we will not do so. The trial court has yet to rule on the adequacy of the new decision, and therefore there is no lower court determination for us to review.[2] Assuming arguendo it would be appropriate for us to rule on the adequacy of the new decision in the first instance, Shayan has not provided us with the full administrative record upon which that decision was based. (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1048, fn. 1 ["It is appellants' burden to provide an adequate record on appeal."].)

We agree, however, with Shayan's alternative contention that the trial court erred by denying her enforcement motion without considering the substance of the University's new decision. The trial court concluded that the University had complied with the writ by reconsidering its decision, as ordered, and therefore enforcement under section 1097 was unwarranted. The trial court did not, however, rule on Shayan's challenge to the substance of the University's new decision, instead stating such challenge should be brought in a new writ petition.

In so ruling, the trial court treated the University's compliance with the original writ as a separate question from

---

[2] For the same reason, we decline to address the University's arguments regarding the adequacy of its new decision.

whether the University's new decision itself passed muster under section 1094.5. Implicit in a writ under section 1094.5, however, is a directive that any reconsidered decisions made in light of the writ also comply with section 1094.5—that is, that those decisions comply with due process, be supported by substantial evidence, and so forth. In evaluating whether the University complied with the writ, therefore, the trial court would have been within its authority to consider whether the University's new decision complied with section 1094.5. It would be both unnecessary and inefficient to require Shayan to file a new writ petition before the trial court could conduct this review.

Our conclusion is supported by the case law cited above. As *City of Carmel-By-The-Sea* and *King* demonstrate, a petitioner may challenge a reconsidered decision through a new writ petition, but need not do so. A petitioner may also request review of the new decision through a written or oral objection to the adequacy of the return, or through a motion to enforce the writ under section 1097. Shayan's motion was an appropriate procedural method to challenge the substance of the University's new decision, and the trial court could have, and should have, addressed the substance of the decision before ruling on Shayan's motion.

The University argues the trial court properly denied Shayan's motion because motions under section 1097 are appropriate only when a writ is " 'persistently disobeyed,' " quoting *Brown v. California Unemployment Ins. Appeals Bd.* (2018) 20 Cal.App.5th 1107, 1114. The University does not address *King*, which held otherwise, and the reasoning of which we find persuasive. *Brown* merely summarizes the language of section 1097—it does not preclude a trial court from exercising its

16

inherent authority to enforce a writ even in the absence of persistent disobedience, as endorsed by *King*.

The University cites *Giannini Controls Corp. v. Superior Court* (1966) 240 Cal.App.2d 142, 151 for the proposition that "the avenue for challenging a renewed decision is a new writ." The University overstates the holding of *Giannini Controls Corp.* In that case, the petitioners successfully obtained a writ of mandate directing the Commissioner of Corporations to act on their request to determine whether they were entitled to a particular certificate. (*Id.* at p. 150.) When the commissioner issued a decision denying the certificate, the petitioners sought to challenge that decision with a supplemental writ petition. (*Id.* at p. 151.) The trial court denied leave to file the supplemental petition. (*Ibid.*) The Court of Appeal held this was error, and that the trial court should have permitted the petitioners to file the supplemental writ petition rather than "compel [them] to relitigate the same question under a different case number, by means of a [new] petition for a writ of mandate . . . ." (*Ibid.*)

*Giannini Controls Corp.* merely held that a supplemental writ petition is a proper method of challenging a respondent's return. It did not address, or foreclose, other methods of challenging a return.

At oral argument, the University contended the trial court, by ruling the University complied with the writ, did in fact rule on the merits of the new decision, and therefore there is no need to remand for further proceedings. We reject this reading of the trial court's ruling. The trial court, despite stating that "the University complied" with the writ, repeatedly indicated it was not ruling on the merits of the new decision, which in the trial court's view should be addressed in a new section 1094.5

17

proceeding. The trial court stated the issue "whether [the new evidence] is sufficient or not, I think it's subject to further proceedings under [section] 1094.5." Later, the trial court similarly stated, "[w]hether [the new evidence is] sufficient or not is not for today." It further stated, "[The University] reconsidered, whether you think it's sufficient or not remains to be seen," and "I think the new decision is subject to a writ under [section] 1094.5." These comments are incompatible with the University's contention that the trial court intended its ruling to address the merits of the new decision.

We therefore reverse and remand for the trial court to consider Shayan's challenge to the substance of the University's new decision. This is not to say that, should the trial court find the new decision deficient for evidentiary or other reasons, the trial court is obliged to order Shayan reinstated, impose sanctions, and initiate contempt proceedings, as Shayan requested. Under both section 1097 and its inherent authority, the trial court may issue whatever orders it deems necessary and proper to enforce the writ. Those orders could, under some circumstances, include remedies such as those urged by Shayan here, but could also be milder, such as directing the University to reconsider its decision further. In other words, the trial court may find the University's new decision inadequate under section 1094.5 without also concluding the University so defied the writ as to deserve punishment. We express no opinion as to how the trial court should rule on this matter.

18

## DISPOSITION

The order denying the motion to enforce the judgment and for an order to show cause is reversed. The matter is remanded for further proceedings consistent with this opinion. Appellant Ariana Shayan is awarded her costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

19