Filed 10/4/23  Han v. Korean Am. Federation of Los Angeles CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DONG Y. HAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KOREAN AMERICAN FEDERATION OF LOS ANGELES, INC.,<br><br>    Defendant and Respondent. | B323748<br><br>(Los Angeles County Super. Ct. No.20STCP04115) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Jeong and Likens, Chan Yong Jeong for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Robert D. Weber, Valerie E. Alter, Bryan M. Wittlin, and Gian Ryan for Defendant and Respondent.

**INTRODUCTION**

Appellant Dong Y. Han filed a petition for writ of mandate seeking inspection of financial records, member lists, and meeting minutes from the Korean American Federation of Los Angeles, Inc. (KAFLA), a nonprofit public benefit corporation, under Corporations Code sections 6330 and 6333.[1] Han alleged that KAFLA mismanaged funds and failed to comply with its own rules regarding electing a president. KAFLA produced some of the requested documents, including certain accounting books and records. The trial court granted Han's petition in part, and KAFLA produced additional documents. Han then filed a motion requesting further additional documents, seeking receipts, bank records, and other source documents that would allow her to investigate alleged financial discrepancies in KAFLA's ledgers; she also requested appointment of an independent auditor under section 6336. The trial court denied Han's motion, concluding that Han was not entitled to additional documents under sections 6330 and 6336, and an auditor was unwarranted under section 6336. Han appealed.

We affirm. Han has not demonstrated that the trial court erred in finding that KAFLA's production complied with sections 6330 and 6333, and that appointment of an auditor was not warranted.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Petition for writ of mandate**

KAFLA is a nonprofit corporation organized to promote the interests of the Korean American community of Los Angeles County. According to KAFLA president James An, KAFLA

---

[1]     All further undesignated statutory references are to the Corporations Code.

"serves as an umbrella organization to over 250 Korean American community organizations throughout Greater Los Angeles," and "KAFLA's social programs include the distribution of food to the needy, Medicare & Medi-Cal assistance to Seniors, and assistance in obtaining Senior and Affordable housing." According to KAFLA's bylaws, all Korean Americans residing in Los Angeles County are members of the organization, and all members over the age of 18 have voting rights. Han, a Korean American living in Los Angeles County, is a member.

Han alleged KAFLA failed to abide by various rules regarding elections for KAFLA president, including the 2020 election, which resulted in the appointment of An as president. On December 8 and 9, 2020, Han requested "disclosure of the records . . . regarding controversies surrounding the KAFLA's improper use of funds and mismanagement of the election by the board, the election management committee and/or officers/board/committee members." She listed 38 categories of documents, requesting that the documents be sent to her within 10 business days.

On December 14, 2020, Han filed a petition for writ of mandate under Code of Civil Procedure section 1085, alleging a single cause of action for "improper and intentional refusal to disclose" certain information under Corporations Code sections "6310, 6320, 6321, 6322, 6323, 6324, 6330, 6333, 6335, 8333, 8337, 9511, [and] 9514." Han alleged she had "made a formal request for disclosure" of certain documents, "but KAFLA knowingly and willfully ignored, and refused to comply with, the request." In her prayer for relief, Han asked the court to order KAFLA to produce all requested documents, invalidate the

3

election of An, order KAFLA to hold a new election, and award Han costs and attorney fees.

**B.    Han's opening brief**

In her opening brief and a supporting declaration, Han asserted that KAFLA is required to hold presidential elections every two years, but "[s]ince the last election where the KAFLA members could actually vote for candidates for the election in 2006, KAFLA never had a real election."  Han stated, "[S]ince 2006, KAFLA has claimed that there was only a single candidate who was qualified for the presidential election, and therefore appointed that candidate, thus interfering with the members' right to vote for candidates."  She contended that in 2020, the KAFLA board "on their own decided to extend the [president's] term by six months . . . from June to December of 2020, which is the equivalent to limiting, and interfering with, the rights of the members to the election of the new president."  KAFLA then "announced James Giwook An . . . as the only candidate and the new president."

Han further asserted that KAFLA took certain steps "to discourage potential candidates from registering" for the elections.  She contended that An "failed to comply with" the registration requirements, but "KAFLA chose to accept him as the candidate in violation[ ] of their own bylaws and election rules."  In addition, "An uploaded his campaign videos soliciting donations to support him as a 'candidate' on the KAFLA's youtube [*sic*] channel called the 'KAFLA TV' that has been run obviously under the name of KAFLA and had over 10,000 subscribers and thousands of view[s] for each video."  Han asserted that An also "improperly used the list of the members who provided their contact information to get KAFLA's help in

4

seeking the benefits from the governments' Covid Relief Programs such as EDD, PPP, and EIDL," and An used KAFLA member information to "create[ ] a chatroom with about 500 members where he discussed about [*sic*] his candidacy."

Regarding her document requests, Han relied on sections 6330 and 6333, relating to nonprofit public benefit corporations and members' rights of inspection.  Section 6330 allows a member to "[i]nspect and copy the record of all the members' names, addresses and voting rights."  (§ 6330, subd. (a)(1).) Section 6333 states in full, "The accounting books and records and minutes of proceedings of the members and the board and committees of the board shall be open to inspection upon the written demand on the corporation of any member at any reasonable time, for a purpose reasonably related to such person's interests as a member."

Han alleged that after she filed her writ petition, KAFLA responded to her production request by "post[ing] some documents on a secured webpage, most of which were the documents that were already disclosed to the public such as the bylaws and the election rules.  Further, it did not allow downloading of any records," even though the Corporations Code mandates that records be made available for copying.

Han asked the court to order KAFLA to produce additional documents, and divided her requests into three groups. In the first group, she asserted that KAFLA should be required to disclose "accounting books and records" pursuant to section 6333. Under this category, she included the following requests, using the numbering from her initial document requests to KAFLA[2]:

---

[2]    We reproduce Han's requests verbatim here, including the language, spelling, and punctuation of Han's requests.  Footnotes within the requests have been deleted.

5

"4. We are informed James An received $3,000 per month without any endorsement or approval of the board of KAFLA.  Please produce ALL DOCUMENTS showing who and through what procedure, such a decision to pay James An was made.

"5. Please also produce ALL DOCUMENTS showing any and all payment for any reason, KAFLA made to James An.

"12. We are informed Jeff Lee has improperly been paid by KAFLA.  Please produce ALL DOCUMENTS showing, mentioning, authorizing, discussing, endorsing or opining on, any payment to Jeff Lee in any form including without limitation to wage, reimbursement, other benefits or equipment, whether or not work-related.

"13. We are informed Laura Jeon has improperly been paid by KAFLA.  Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to Laura Jeon for any reason in any form including without limitation to wage, reimbursement, other benefits or equipment, whether or not work-related.

"14. We are informed James An has improperly been paid by KAFLA.  Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to James An for any reason in any form including without limitation to wage, reimbursement, other benefits or equipment, whether or not work-related.

"15. We are informed the board members who participated in distribution of the funds donated for helping undocumented members in needs due to COVID-19 has improperly been paid by KAFLA. Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, the identities of the participating board members and any payment given to them in any form including without limitation to wage, reimbursement, other benefits or equipment, whether or not work-related.

"16. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any grants or donations from any government offices to KAFLA including without limitation to Korean government, Los Angeles City or County, or state/federal government offices, on or after January 1, 2018.

"17. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any grants or donations from other non-profit organizations, individuals, enterprises given to KAFLA, on or after January 1, 2018.

"19. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any expenditure by KAFLA in the amount of or over $200 including without limitation to bank statements, canceled checks, any statement, receipts, invoices and payment records or if it is regarding any event, the picture of the event, on or after January 1, 2018.

"28. Please produce ALL DOCUMENTS submitted to any of the California State Franchise Tax Board, the

Internal Revenue Service, California State Attorney General's Office on or after January 1, 2018.

"32. Please also disclose; (a) adequate and correct books and records of account ; (b) Minutes of the proceedings of the corporation's members, board, and board committees; (c) Members' records containing their names, addresses, and the class of membership held by each; and (d) Minutes, books, and records must be kept in written form or a form capable of being converted into a clearly legible, tangible form.

"34. We are informed James Ahn (board chairman) has improperly been paid by KAFLA. Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to James Ahan for any reason, in any form, including without limitation to wage, reimbursement, other benefits, on or after January 1, 2018.

"35. We are informed Ik Chung Um ("[the person's name in Korean]") has improperly been paid by KAFLA. Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to Ik Chung Um in any form including without limitation to wage, reimbursement, other benefits or equipment, whether or not work-related, on or after January 1, 2018.

"36. We are informed some board members have improperly been paid by KAFLA. Please also produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to any of the board members in any form including without limitation to

8

wage, reimbursement, other benefits or equipment, whether or not work-related, on or after January 1, 2018.

"37. We are informed KAFLA has improperly been wastefully spending or even converting its fund in the form of meals. Please also produce ALL DOCUMENTS showing mentioning, discussing, or opining on, any payment related to meals including without limitation to receipt, invoice, payment records, etc., on or after January 1, 2018.

"38. We are informed KAFLA has improperly been wastefully spending or even converting its fund in the form of purchasing equipment such as ipad or iphone. Please also produce ALL DOCUMENTS showing mentioning, discussing, or opining on, any payment related to purchasing, renting, or leasing any equipment or vehicles including without limitation to receipt, invoice, payment records, etc., on or after January 1, 2018."

Han asserted that KAFLA had produced "a few pages of its financial statements full of self-serving conclusory statements," but "[t]here is no breakdown or explanation as to what grants or contracts, from or with whom, when, why and how, the amount was received. There is no way to understand what that is about or verify the accuracy." Han continued, "There is no breakdown, or supporting records for $381,850 expenditure for 'health and welfare', $89,272 for 'Empowerment', $224,138 for 'General Administration'. There is no way for a member to get to know whether, for what, when, and how any part of the total expenditure in the amount of $754,483 was spent. . . . Even for

9

$120,814 for salaries and wages, there is no way for a member to know who received how much, for what and when, as well as whether it includes the potentially improper payments to board members or officers.  If paid, for what, how much and when.  The same problems exist as to other items such as $58,383 for meetings, $37,331 for outside service, $20,930 for rent, $29,858 for supplies and other, the total of which KAFLA claims to be over $400,000.00.  The other big chunk of funds KAFLA claims to have spent, with no proof or explanation, is $311,333 for 'relief fund'."  Han argued that KAFLA "should be ordered to produce all of the accounting books and records including bank statements and check copies verifying amounts of the revenues and the expenditures, copies of agreements, receipts, invoices, reimbursement forms, any board resolutions approving expenditures, and KAFLA accounting books and ledgers."

In her second group of requests, Han contended that KAFLA was required to disclose "the minutes of the proceedings of the board, committees, and members" under section 6333.  In this group, she included the following requests, reproduced verbatim:

<u>"Re: 2020 Election</u>
"1. We are informed James An did not pay $50,000 for his registration as a candidate.  Please produce ALL DCOUMENTS showing, if any, James An (aka James Giwook An) paid $50,000 for his registration as a candidate.[ ]
"3. We are informed James An improperly raised fund using the KAFLA TV owned and managed by KAFLA.  Please produce ALL DOCUMENTS discussing, analyzing, opining the issue of whether

10

such an improper use was in violation of the election rules applicable for KAFLA's presidential election including without limitation to any meeting minutes, emails or text messages in a chat room. Please produce ALL DCOUMENS showing any donation given for his campaign. Please also produce ALL DOCUMENTS showing KAFLA's expenditure or costs spent in purchasing any equipment, promoting on youtube.com or other media, paying any person or entity.[ ]

"7. We are informed James An created a Kakao chat room ("Chat Room") using the contact information of about 500 Benefited Members.[ ] Please produce ALL DOCUMENTS, pertaining to how the Chat Room was created and who were invited and excluded, and who are currently in the Chat Room.

"10. We are informed James An failed to submit all of the required documents needed for registration as a candidate for KAFLA president. Please produce ALL DOCUMENTS submitted by James An for his registration as a candidate. (you may redact the personal information such as DOB, and SSN. We are also ready to stipulate to any reasonable protective order for protection of the personal information that may be produced per this request.) Please also produce ALL DOCUMENTS discussing, analyzing, mentioning, opining on, James An's qualification for registration as a candidate including without limitation to any meeting minutes.

"11. We are informed KAFLA Election Management Committee discussed about the issues surrounding James An's qualification for registration as a candidate and/or the elected without election, Please produce ALL DOCUMENTS showing such discussion, any effort for fact-checking on the contents on hit document submitted, or any decision made on the issues, without limitation to any meeting minutes.

"21. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of James An's application, determination that he qualified and determination that he should be elected without election.

"22. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the question from Chan Yong Jeong as to the election-related rule, the review of the questions, determination as to when and how to answer the questions.

"23. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of James An's improper use of KAFLA TV for his campaign.

"24. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of James An's improper use of the term "candidate ([candidate in Korean])" in soliciting the campaign donation on KAFLA TV.

"25. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of James An's continued participation in making videos uploaded even after his announcement video on November 5, 2020.

"29. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of Hyun Moo Choi (aka David Choi)'s campaign activities

"31. Please produce ALL DCOUMENTS showing James An's resignation from any positions at KAFLA.

"33. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any payment to any of the members of the election management committee ("[Election Committee in Korean]") for any reason, in any manner, including without limitation to wage, reimbursement, meals, other benefit or equipment, on or after January 1, 2018.[ ]"

"Re: 2016/2018 Election

"2. We are informed Laura Jeon did not pay in 2016 and 2018 any amount for her registration as a candidate.  Please produce ALL DOCUMENTS showing, if any, her payment of any amount for her registration.[ ]

"Re: Bylaws violations / infringement upon the members' rights

"9. We are informed KAFLA board improperly decided to extend by 6 months,[ ] the terms of the President, and other officers including the Board Chairman and board members in order to postpone the date of election of the next KAFLA president. Please produce ALL DOCUMENTS showing on what basis, by whom, through what procedure and on what basis such a decision has been made, including without limitation to the board's meeting minute, relevant sections of the Bylaws.

"Re: Meetings

"18. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any board meeting including without limitation to notices, minutes, agenda, proxies, handouts or other materials including any discussions at the chat room of the board members, if any, on or after January 1, 2018.

"20. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any meeting of the election management committee ("[Election Committee in Korean]") including without limitation

14

to notices, minutes, agenda, proxies, handouts or other materials including any discussions at the chat room of the board members, if any. Please also produce ALL DOCUMENTS showing the invitations given to fill a committee member's seat, the applications submitted, who reviewed the candidates for the committee members position, who decided to appoint each of the committee members."

Han argued these requests were "reasonably related to the interests of the members to have a fair and proper elections, and protect the members' voting rights. Further, this is to verify whether the KAFLA elections and the Election Committee proceedings were properly conducted in timely manners in compliance with the applicable rules. . . ."

In her third group of requests, Han asserted that KAFLA was required to produce "the record of the names, addresses, and voting rights of all members" under section 6330. In this group, Han included the following requests:

"6. We are informed KAFLA helped some of the members ("Benefited Members") in getting the EDD benefits, Economic Injury Disaster Loans, Paycheck Protection Program loans ("Benefits") but their contact information was improperly used by James An for his campaign. Please produce the list of the members who received the help to get any of the Benefits. (you may redact the personal information such as DOB, SSN, and/or other financial information. We are also ready to stipulate to any reasonable protective order for protection of the

personal information that may be produced per this request.) Please produce ALL DOCUMENTS pertaining to the procedure, rules or protocols of maintaining, managing, using, or protecting the Benefited Members' information.

"8. We are informed James An used the Chat Room for his campaign such as announcing his candidacy, delivering his campaign messages, and soliciting registration as a voter and/or donations to his campaign. Please produce ALL messages exchanged in the Chat Room.

"26. Please produce ALL DOCUMENTS showing, mentioning, discussing, or opining on, any election management committee member's review and decision on the issues surrounding the review of James An's approaching and using the list of the members who received helps from KAFLA in getting the EDD benefits, Economic Injury Disaster Loans, Paycheck Protection Program loans, for his campaign.

"27. Please produce any messages exchanged in a chat room of the election committee members, if any.

"30. Please produce the list of the members who registered as a voter for the election of the KAFLA president in 2020."

Han contended these requests were relevant to "An's improper use of the members list and their contact information, personally for his own campaign, in violation of Corporations Code Section 6338(a). . . . The demands are reasonably related to the purposes of protecting the interests and rights of the

16

members from improper uses of their list and contact information."

**C.     KAFLA's opposing brief**

In its opposing brief, KAFLA asserted that Han's counsel, Chan Yong Jeong, was "a publicity-seeking member of the local Korean American community, [who] announced his intention to run for president of KAFLA in the 2020 election, but later withdrew when support for his candidacy failed to materialize. Ever since, Jeong has conducted a public campaign criticizing the election procedures and results. As part of his campaign, Jeong recruited [Han] to pursue this Petition for Writ of Mandate seeking an order requiring KAFLA to allow Han to inspect an astounding thirty-eight categories of internal corporate documents."

KAFLA stated that the "qualifications for the President position are contained in KAFLA's publicly[ ]available By-Laws, and have remained materially unchanged for approximately ten years. . . .  Likewise, KAFLA's specific Election Management Regulations . . . are publicly available on the KAFLA website and have remained materially unchanged for around ten years." These regulations provide that "any prospective candidate for President must pay a registration fee of $50,000," and the presidential candidate may hold fundraisers to contribute to this registration fee. If only a single candidate registers to run, the election committee may declare the lone candidate the winner without the necessity of a public voting process.

The 2020 election, scheduled for June 2020, was delayed by unanimous vote of the board until December 2020 due to the COVID-19 pandemic. An "was the only individual who satisfied all qualifications to run for President of KAFLA during the 2020

17

election," and therefore was declared the new president. Afterwards, Han and her counsel Jeong sent the "litigation-style" document requests to KAFLA.

KAFLA asserted that it had produced all documents required under sections 6330 and 6333, "and several additional categories of documents beyond those required by the Code." KAFLA stated that it had produced all minutes of board of director meetings for the previous three years, as well as "audited financial statements" for the previous three years. KAFLA also "assembled copies of all the checks from persons who donated funds to the winners of KAFLA's Presidential elections in 2016, 2018 and 2020, and the deposit slips evidencing the deposits of the $50,000 candidate fee by each of those candidates into KAFLA election accounts." KAFLA stated that it had not produced a membership list, because "all Korean-American adults who reside within Los Angeles County are considered 'members' of KAFLA who may participate in KAFLA's services and officer elections without any need to register with the organization or pay dues," and KAFLA did not maintain any membership lists.

KAFLA argued, "The Corporations Code does not give members of a non-profit corporation the right to conduct unfettered discovery, let alone provide them unrestricted access to all corporate documents." KAFLA asserted that "the remaining documents which [Han] now seeks are records that do not, by any stretch of the imagination, come within the terms 'accounting books and records' or 'minutes.' And the vast majority of the demanded documents have nothing to do with KAFLA's 2020 election." It further asserted that documents regarding individuals' donations to KAFLA were protected by personal

18

privacy rights. KAFLA argued that Han could not show that KAFLA had a duty to produce additional documents or that Han had a right to such production, as required for a writ of mandate under Code of Civil Procedure, section 1085.

## D.     Han's reply brief

In her reply brief, Han stated that KAFLA "failed to deny" most of her contentions, called An's declaration "false testimony," and asked the court to find An in contempt. She asserted that her document requests were intended to determine whether KAFLA was properly using funds, according to the Corporation Code's "policy of keeping the public-benefit corporations' transparency of its accounting and other proceedings."

Han argued that KAFLA should be required to produce not only minutes of board meetings, but also "the documents reviewed, discussed, or approved at the relevant meetings." She asserted that there was a chat room used exclusively by election committee members that "was tantamount to the official proceedings of the Election Committee," and therefore should be produced. Han asserted that other documents relating to the election should be produced because "[t]he Election is the most important official 'proceeding' of KAFLA." As for member lists, Han asserted that members were required to register before voting, and "KAFLA could and should produce the contact information of the registered voting members."

Han further contended that KAFLA should produce all financial and accounting records, including bank statements and copies of checks, because nonprofit public benefit corporations "do not have . . . business confidential information, especially about accounting matters." Han also argued there was no privacy concerns in releasing information about donors, and even if there

were, KAFLA could redact such information to protect individuals' privacy rights.

## E.     Court ruling: Order 1

The court issued a written ruling on May 19, 2021; on appeal, Han calls this "Order 1."  The court found that "KAFLA has complied with its obligation to produce meeting minutes and is unable to provide a membership list," but "KAFLA has not sufficiently complied with its obligation to produce 'accounting books and records' as required by statute."

Regarding the accounting books and records, consisting of the first group of requests in Han's opening brief, the court noted that "there is no clear definition of 'accounting books and records'" under the Corporations Code.  The court nevertheless found that the documents KAFLA provided to Han were insufficient to meet its duties under section 6333, because "[a]ccounting records—by KAFLA's own argument and proffered definition—includes more than three years of audited financial statements."  The court further stated, "While the court agrees KAFLA may not be required under the Corporations Code to provide underlying source documents or specifically categorize payments made or money received, the Corporations Code allows [Han] to inspect and copy KAFLA's accounting records to the extent they exist including the general ledger, cash receipts journal, cash disbursements journal and any other similar ledger or journal. The Legislature did not limit a member's inspection rights to mere financial statements."  The court therefore ordered KAFLA to produce any additional documents meeting this definition dating from 2018 to the present, and stated, "KAFLA may sanitize records as it believes appropriate based on third-party privacy rights."

20

Regarding Han's second group of requests for meeting minutes, the court held that Han was not entitled to relief. The court stated that section 6333 provides only for minutes of certain proceedings, but Han's requests were "akin to litigation-type discovery, not inspection of minutes from scheduled meetings of KAFLA's Board of Directors or committees of the Board." The court stated that Han's requests for chat room transcripts, for example, were "outside the limited categories of records" in section 6333.

Turning to Han's third group of requests for information about member lists and voting rights, the court agreed with KAFLA that the voting rights of members are publicly stated in KAFLA's bylaws. In addition, KAFLA did not maintain membership lists, and therefore "[i]t appears KAFLA has nothing further to produce for this category of documents." In a footnote to the order, the court stated, "This is without prejudice to Petitioner seeking other records through a request that is appropriately tailored."

## F.    Judgment on the pleadings

KAFLA produced additional documents pursuant to the court's order. KAFLA then moved for judgment on the pleadings on the grounds that Han had only asserted a single cause of action for production of documents, and KAFLA had produced all documents required, so there was nothing left to be tried. Han opposed the motion, asserting that she also "alleged sufficient facts to seek the writs [*sic*] to invalidate the purported election of An and mandate a new election under the supervision of a court-appointed neutral." She also asked that the court allow her to amend her petition if KAFLA's motion were granted.

21

In an order dated August 6, 2021, the trial court granted KAFLA's motion for judgment on the pleadings and granted Han leave to file an amended petition within 30 days. The court held that the petition as written was "inadequate to seek an invalidation of the election," but that Han might be able to allege such a cause of action in an amended petition.[3]

## G.     Han's motion for additional documents and Order 2

Han filed a first amended petition on September 8, 2021, which repeated her initial allegations and included a second cause of action for "improper, unfair and unreasonable election procedure." The second cause of action is not relevant for purposes of this appeal.

On January 28, 2022, Han filed a motion requesting that the court order KAFLA to produce additional documents, and seeking an order appointing a third-party auditor under section 6336, subdivision (a).[4] She asserted that "KAFLA's ledgers produced in this case did not show the major items missing on the financial statement and the ledger in the amount of about $850,000 or more, which requires further investigation. . . . The disclosed records were incomplete and/or false, and therefore, [Han] hereby seeks the Court's order or writ mandating . . . KAFLA to disclose additional records, and/or mandating KAFLA

---

[3]      In the same order, the court also granted KAFLA's motion for a protective order relating to a subpoena served on KAFLA's bank on the grounds that KAFLA never received the subpoena, and therefore did not have the opportunity to move to quash it.

[4]      Section 6336, subdivision (a) states that "[u]pon refusal of a lawful demand for inspection . . . , the superior court . . . may, for good cause shown, appoint one or more competent inspectors or independent accountants to audit the financial statements" of the corporation.

22

to disclose under penalty of perjury all of the accounting records to a Court-appointed third party auditor to audit KAFLA's accounting."

Han contended that despite the court's order that KAFLA produce documents from 2018 to the present, KAFLA failed to produce "ledgers and journals" from January 2018 to June 2018. She further asserted that a review of the ledger information KAFLA produced "reveal[ed] big discrepancies because the ledger missed out numerous major items in the amount of about $850,000.00 or more." In particular, Han contended that "donations for COVID-19 Relief Funds in the amount of about $240,000.00 are missing"; "James An's donation of $210,000.00 for a community center project is missing"; a balance of $149,000.00 from donations for a Korean Garden project was not reflected in the ledgers; purported transfers of funds from one bank account to another did not add up; the ledgers did not show the deposits of the presidential candidates' registration fees; and information about compensation paid to officers, directors, and employees was inaccurate or missing. Han also asserted that KAFLA stated on its website that more than 250 members had registered for the 2020 election, so when KAFLA represented that it had no such information, it had "falsely misled the Court."

KAFLA opposed Han's motion. It stated that it had complied with Order 1, then moved for judgment on the pleadings, which the court granted. Han's motion sought to resurrect the same claims in what was essentially an untimely motion for reconsideration of the court's previous orders. (See Code Civ. Proc, § 1008 [a motion for reconsideration must be filed within 10 days of service of the relevant order].)

23

Regarding the substance of Han's contentions, KAFLA asserted that Han's arguments involved "large jumps in logic [that] are strung together to create conclusions that fit the larger narrative created by Jeong, that KAFLA is mismanaging its financial records in order to conceal something, when, in reality, KAFLA has disclosed its entire general ledger for the time requested." It noted that Han asserted the Korean Garden funds were "known" to be in an account, with no support for such a claim. And Han's allegations about compensation "bear no weight against the fact that KAFLA has produced all of the requested and court ordered ledgers and financial statements showing compensation payments." KAFLA also asserted that a financial audit was unnecessary. Han filed a reply in support of her motion.

On March 2, 2022, in what Han calls "Order 2," the court denied Han's motion. In its written tentative ruling, the court noted that KAFLA argued Han's motion was akin to a motion for reconsideration of Order 1. The court stated, "Whether [Han] intended reconsideration is unclear. The court elects to treat the motion akin to a motion to enforce."

In its tentative ruling, the court explained that Han was "not entitled to these specific source records pursuant to the Court's May 19, 2021 order. That is, [Han] has not shown KAFLA has failed to comply with the court's order simply because [Han] has determined there are accounting inconsistencies or omissions. This is not an action for an accounting. Rather, [Han] appears to seek civil discovery for an unalleged civil misconduct claim not at issue in these proceedings." Regarding payments to officers, directors, and employees, the court stated that Han did "not demonstrate that

24

KAFLA has any obligation to provide any more information on this subject based on Corporations Code sections 6330 and 6333." The court noted that although Han alleged that KAFLA failed to make certain withholdings or otherwise improperly managed funds, Han "has conflated the narrow scope of her petition to obtain records with claims of wrongdoing," and, "To the extent [Han] contends KAFLA has committed some civil wrong, it is not before this court in this action." The court also denied Han's request for appointment of an auditor, noting that the plain language of section 6336 authorizes the appointment of an auditor only when a corporation has failed to comply with a lawful inspection demand, which was not the case here.

In Order 2 the court stated, "The court may reconsider its May 19, 2021 inspection order." It ordered the parties to submit additional three-page briefs, and set a "Hearing on Motion for Reconsideration." According to KAFLA, the court requested "briefing on the scope of a non-profit corporation's obligation to turn over source documents for financial statements in response to a member's request for inspection under the Corporations Code."

## H.    Additional briefing and Order 3

The parties each filed briefing discussing section 6333 and the meaning of "accounting books and records." KAFLA asserted that no relevant authority suggested "that (1) 'accounting books and records' includes source documents; or that (2) source documents include bank statements." It also asserted that Han had not shown that such documents were "reasonably related to such person's interests as a member." (§ 6333.) Han admitted there was no statute or case law directly on point, but asserted

25

that cases from similar contexts supported her contention that KAFLA should be ordered to produce its bank records.

On March 23, 2022, in what Han calls "Order 3," the court stated in a written order, "Having considered the argument of counsel/parties, the court rules as follows:  The court reviewed the prior order and determines it will not reconsider the prior order."

On July 29, 2022, Han filed a request to dismiss her remaining claim without prejudice; the court entered the dismissal on August 1, 2022.  Han timely appealed, stating on her notice of appeal that she was appealing from Orders 1, 2, and 3.[5]

## DISCUSSION

Han asserts three points of error, contending that (1) the trial court should have ordered KAFLA to produce additional documents; (2) the court erred in treating Han's motion for additional documents as a motion for reconsideration, and (3) the court erred in denying Han's request for an independent auditor.

Under Code of Civil Procedure section 1085, "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins."  (Code Civ. Proc., § 1085, subd.

---

[5]  The parties do not address appealability following a dismissal.  An appellate court may "'"treat a voluntary dismissal *with prejudice* as an appealable order if it was entered after an adverse ruling by the trial court in order to expedite an appeal of the ruling."'"  (*Flowers v. Prasad* (2015) 238 Cal.App.4th 930, 935 [emphasis added].)  A dismissal *without* prejudice, when "unaccompanied by any agreement for future litigation," may also "create sufficient finality" to allow an appeal.  (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105.)

(a).)  To be entitled to a writ of mandate under Code of Civil Procedure section 1085, a petitioner must demonstrate: (1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty.  (*Kavanaugh v. West Sonoma County Union High School Dist*. (2003) 29 Cal.4th 911, 916.)

"'[W]hen an appellate court reviews a trial court's judgment on a petition for a traditional writ of mandate, it applies the substantial evidence test to the trial court's findings of fact and independently reviews the trial court's conclusions on questions of law, which include the interpretation of a statute and its application to undisputed facts.'"  (*CV Amalgamated LLC v. City of Chula Vista* (2022) 82 Cal.App.5th 265, 280.)

## A.    Requests for documents

### 1.    *Accounting books and records*

Section 6333 provides that a corporation's "accounting books and records . . . shall be open to inspection."  Han agrees that KAFLA "produced ledgers and journals per Order 1."  However, she asserts that in Order 1 the trial court erred by narrowly interpreting the phrase "accounting books and records."  Han asserts that "accounting records" should be interpreted to include "any piece of evidence about the past," such as "the sources of information on accounting books such as ledgers and journals, only by which meaningful and reasonable inspection could be conducted on this non-profit corporation."  She argues she was entitled to inspect KAFLA's contracts, receipts, bank records, and copies of checks.  She contends, "By seeing only ledgers and journals, members would not be able to reasonably inspect the accounting in order to verify the truthfulness and accuracy of the numbers stated [in] journals and ledgers."  She

27

asserts the documents KAFLA did produce included discrepancies, and without access to additional documents she is "unable to finish her inspection meaningfully." KAFLA asserts that Han was not entitled to source documents under section 6333.

When we are called upon to interpret a statutory provision, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673.) We examine the statutory language, giving it a plain and commonsense meaning. (*Ibid*.) "'"We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment."'" (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616.) We may also consider the relevant "'statutory scheme . . . , giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.'" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.)

The phrase "accounting books and records" is not defined in in section 6333 or similar statutes.[6] However, a suggestion of the Legislature's intent may be gleaned from the other statutes in the relevant chapter of the Corporations Code, which allows different levels of inspection to different individuals. Under section 6333, for a member of a corporation such as Han, the

---

[6] We note that largely identical language occurs in section 8333 pertaining to nonprofit mutual benefit corporations, section 9512 pertaining to nonprofit religious corporations, and section 12603 pertaining to cooperative corporations. Similar language is also used in section 1601, pertaining to shareholder rights for domestic corporations.

"accounting books and records" of the corporation must be "open to inspection" upon demand.  (§ 6333.)  By contrast, a director of the corporation has an "absolute right" to inspect "all books, records, and documents of every kind."  (§ 6334.)  When an auditor is appointed by a court, "[a]ll officers and agents of the corporation shall produce . . . all books and documents in their custody or power" to the auditor.  (§ 6336, subd. (b).)

KAFLA argues the source documents Han seeks are not encompassed by section 6333:  "By using the phrase 'accounting books and records' in section 6333 instead of the broader phrases in sections 6334 and 6336, the Legislature strongly indicated that it intended to restrict members' inspections to 'accounting records'" rather than *all* records.  We agree.  The language of section 6333 is far more limited than that of sections 6334 and 6336, and we assume this was an intentional choice by the Legislature.  When the Legislature has chosen to include a phrase in one provision of the statutory scheme but to omit it in another provision, we presume the Legislature intended to convey a different meaning in the different provisions.  (*Walt Disney Parks & Resorts U.S., Inc. v. Superior Court* (2018) 21 Cal.App.5th 872, 879.)  Han proposes that she is entitled to a level of disclosure that would allow her to audit or check the accuracy of the produced books and records,[7] but the code

_____

[7]     See, e.g., *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 380:  "In a typical audit, a CPA firm may . . . confirm account balances and mathematical computations.  It might also examine sample transactions or records to ascertain the accuracy of the client company's financial and accounting systems.  For example, auditors often select transactions recorded in the company's books to determine whether the recorded entries are supported by underlying data (vouching).  Or, approaching the problem

expressly provides that directors and auditors—not members—have a right to inspect this sort of financial documentation. It is not the role of a court "to insert what has been omitted" from section 6333. (Code Civ. Proc., § 1858.)

The cases Han cites do not support her position. Han relies on *Schnabel v. Superior Court* (1993) 5 Cal.4th 704 (*Schnabel*), for example, a marital dissolution case in which the husband was employed by a close corporation and held 30 percent of its stock; the stock was community property. In an attempt to "appraise the corporation's value and to ascertain [the husband's] remuneration and benefits," the wife sought certain financial records from the corporation. (5 Cal.4th at pp. 709-710.) The Supreme Court considered whether the wife was entitled to review the corporation's "bank activity statements, accounts receivable and payable listings, ledgers, cash receipts and disbursement records, and sales and purchase registers." (*Id.* p. 710.)

The Supreme Court noted that "information about the value of community assets and the parties' financial status is clearly relevant to the spouse's interests in obtaining a fair division of those assets and fair attorney fee and spousal support (and, in other cases, child support) awards. Moreover, at least as to a division of assets and child and spousal support awards, those interests are strongly protected by California law." (*Schnabel, supra*, 5 Cal.4th at p. 711.) The court also observed that whatever rights the husband had as shareholder and as

from the opposite perspective, an auditor might choose particular items of data to trace through the client's accounting and bookkeeping process to determine whether the data have been properly recorded and accounted for (tracing)."

fiduciary to protect community assets, the wife also had such rights "either indirectly through [the husband], or directly, as in this case, by means of third party discovery." (*Id.* at p. 715.)

In this context, the *Schnabel* court considered the inspection rights of a shareholder under section 1601, subdivision (a), which allows a shareholder to inspect "[t]he accounting books, records, and minutes of proceedings of the shareholders and the board and committees of the board." The court clarified, however, "We need not precisely define the shareholder right of inspection in all situations. This is a marriage dissolution proceeding, not a shareholder inspection action. The shareholder rights support [the wife's] claim to third party discovery, but [the wife's] rights here and another shareholder's rights in other situations are not necessarily coextensive. Our resolution of this issue rests on the combination of [the wife's] need to discover the records, the legislatively declared policy in favor of disclosure, and the shareholder right of inspection. Given the strong public policy in favor of fair child and spousal support awards and a fair division of community assets, we believe that the 'accounting books and records' discoverable in this proceeding should be construed to encompass the records reasonably related to this purpose." (*Schnabel, supra*, 5 Cal.4th at p. 717.) The court continued, "Here, all requested documents were relevant to the corporation's value and the parties' financial status." (*Ibid.*)

Han also cites *Austin v. Turrentine* (1939) 30 Cal.App.2d 750 (*Austin*), in which both the plaintiffs alleged that the defendants had engaged in fraud involving investment in a joint venture oil company. The plaintiffs, who sought an accounting, requested the production of company books and records at a defendant's deposition; the trial court largely denied the request.

31

(30 Cal.App.2d at p. 756.)  The Court of Appeal determined that the plaintiffs had "a right to an accounting," and therefore the plaintiffs were entitled to inspect "such books, papers, records, journals and entries as, in the light of the pleadings and issues, may be material and pertinent." (*Id*. at p. 763.)  The court discussed the plaintiffs' allegations and stated, "We believe from the undisputed facts, the pleadings and proof, that it may be fairly inferred that a trust relationship is involved and that the books and documents contain evidence material to plaintiffs' cause of action." (*Id*. at p. 764.)

Han additionally cites *Mooney v. Bartenders Union Local No. 284* (1957) 48 Cal.2d 841 (*Mooney*), in which the plaintiff, a union member, asked the court to compel his union to allow inspection of certain union financial records.  The union argued that the plaintiff had failed to exhaust all required remedies with the union before filing his action.  (48 Cal.2d at p. 843.)  The Court of Appeal, comparing the case to stockholder inspection actions, found that "it was unnecessary for [the plaintiff] to exhaust the appellate procedure required by the [the union's] constitution before applying to the courts for relief." (*Id*. at p. 845.)

Han argues that these cases, as well as cases from other jurisdictions, involve "the meaning of the exact same terms 'accounting books and records.'"  However, she ignores the contexts of these cases, and makes no argument about why the reasoning of these cases applies here.  We find these cases are distinguishable.  As the Supreme Court in *Schnabel* specifically noted, its analysis was unique to the marital dissolution context and is not necessarily applicable to a shareholder action generally.  Moreover, KAFLA's financial information does not

32

impact Han personally, as did the community property shares in *Schnabel*. In addition, Han is not entitled to an accounting, as in *Austin*; her sole cause of action was for the inspection of records under sections 6330 and 6333. And although the court in *Mooney* mentioned stockholder actions, its holding was limited to whether the plaintiff was required to exhaust other remedies, which is not relevant here. (See, e.g., *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1160 ["it is axiomatic that cases are not authority for propositions not considered"].)

In short, Han cites no authority suggesting that she was entitled under section 6333 to inspect more than the ledgers and journals KAFLA produced pursuant to Order 1.

    2.    *Meeting minutes of the Election Committee*

Han agrees that KAFLA "produced the minutes of the board meetings and election committee meetings." (See § 6333 ["The . . . minutes of proceedings of the members and the board and committees of the board shall be open to inspection . . . ."].) She asserts, however, that the trial court should have also required KAFLA to produce transcripts from "chat rooms" used by members of the election management committee. She asserts that because the election committee used the chat room to communicate, "the discussions in the chat room should be deemed proceedings" subject to inspection under section 6333.

The trial court held that chat room records were not encompassed by section 6333. We find no error in this ruling. Han asserts that "proceedings" constitute "an official record of things said or done," but she offers no suggestion that the chat room was used for committee "proceedings" as opposed to informal conversation. Indeed, the only evidence Han relies upon is a page purportedly from the chat room, giving notice about the

time and date for a meeting.  KAFLA represented in the trial court that it produced all meeting minutes in its possession.  Thus, the court's determination that KAFLA complied with section 6333 with respect to meeting minutes is supported by substantial evidence.

    3.    *Records of the names, addresses, and voting rights of members*

Han further contends the trial court erred in denying her request for the names, addresses, and voting rights of KAFLA members.  (See § 6330, subd. (a)(1) [a member may "[i]nspect and copy the record of all the members' names, addresses and voting rights"].)  Han argues the trial court erred when it relied on KAFLA's representation that it does not maintain any member lists.

The parties agree that according to KAFLA's publicly available bylaws, the members of KAFLA consist of all Korean Americans living in Los Angeles County, and all adult members may vote.  Han asserts, however, that members were required to register before voting in the 2020 election, and she points to evidence she submitted in the trial court that some members filled out the voting registration form.  She argues KAFLA should be required to provide all 2020 voter registration information to her.  KAFLA maintains that it has no information to provide, pointing to An's declaration stating that KAFLA did not "register any voters for the 2020 election."

Han describes the information she is seeking, but she offers no argument or authority as to why she is entitled to the 2020 registration information—to the extent it exists—under section 6330.  The "voting rights" of the members are made clear in the bylaws, and Han offers no authority suggesting she is entitled to

34

information about particular members' specific activity involving any one election.  Moreover, although she contends some members filled out registration forms in 2020, one of her main contentions is that no election was held in 2020.  An stated that KAFLA did not register any voters for the election, and nothing in the record suggests that KAFLA actually gathered or maintained such information.  As the trial court noted, there was no "evidence that such records were maintained and capable of being produced."  The court's order regarding the voting rights of members is therefore supported by substantial evidence.

## B.    The trial court's reconsideration of Order 1

After the trial court granted KAFLA's motion for judgment on the pleadings, Han filed her motion for additional documents. Addressing this motion in Order 2, the court stated in its tentative ruling that Han "seeks to enforce her right to inspection under Corporations Code sections 6330 and 6333."  The court added in a footnote, "Whether [Han] intended reconsideration is unclear.  The court elects to treat the motion akin to a motion to enforce."[8]  The court then denied Han's motion, but stated that it would reconsider Order 1.

Han argues this was erroneous.  She notes that the trial court stated in Order 1 that its order was "without prejudice to [Han] seeking other records through a request that is appropriately tailored."  She asserts, "Treating [Han's] second request . . . as a motion for reconsideration was improper because

---

[8]    A court that issues a writ may make "any orders necessary and proper" to compel enforcement of the writ.  (Code Civ. Proc., § 1097; see also *King v. Woods* (1983) 144 Cal.App.3d 571, 577-578.)

. . . Order 1 expressly stated it was without prejudice for properly tailored requests for additional records."

A trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard. (*New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) In reviewing an enforcement order for a writ, "at issue is whether the trial court erred either in concluding that [the respondent] had failed to comply with the Writ or in fashioning the specifics of its Enforcement Order." (*Robles v. Employment Development Dept.* (2015) 236 Cal.App.4th 530, 546.)

Here, we find no error under either standard. Han sought the production of documents under sections 6330 and 6333, and Order 1 addressed that contention. Han then moved to inspect additional documents that she asserted she was entitled to review under section 6333. The court's tentative ruling makes clear that the court considered whether Han was entitled to the additional documents she sought. The court even went a step further, requesting briefing regarding reconsideration as to whether Order 1 should be expanded. The court clearly considered Han's arguments, and ruled on them. Nothing suggests that the court denied the motion because Han was barred from requesting additional records. Han has not demonstrated that she was entitled to a different procedure than the one the court followed.

Moreover, Han does not contend that the court would have reached a different conclusion had it approached the motion differently. Thus, Han does not suggest she was prejudiced by the court deciding her motion in this way. (See, e.g., *Mireskandari v. Edwards Wildman Palmer LLP* (2022) 77

36

Cal.App.5th 247, 265 ["Prejudice 'is never presumed but must be affirmatively demonstrated by the appellant'"].)

## C.    The appointment of inspectors or auditors

Finally, Han asserts the trial court erred by denying her request to appoint independent inspectors or auditors.  Section 6336 allows a superior court to appoint an inspector or auditor "[u]pon refusal of a lawful demand for inspection."  (§ 6336, subd. (a).)  In Order 2, the trial court denied Han's request for appointment of an auditor on the grounds that KAFLA had not failed to comply with a lawful inspection demand.

Han argues this was an abuse of discretion, because KAFLA did not comply with sections 6330 and 6333 in that its "production of accounting records [was] deficient," and "the ledgers and journals produced are grossly incomplete and inconsistent."  As discussed above, Han has not demonstrated that she was entitled to the additional documents she seeks.  Thus, she has not shown that KAFLA failed to comply with a lawful demand for inspection, which would support the appointment of an auditor.  We therefore find no error in the court's ruling, which was supported by substantial evidence.

## DISPOSITION

The judgment is affirmed.  KAFLA is entitled to its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

CURREY, P.J.                                        ZUKIN, J.

37